UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY JOVEL, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>I-HEALTH, INC., a Delaware corporation,<br><br>    Defendants. | Case No. CV 12-05526 DDP (JCGx)<br><br>**ORDER GRANTING MOTION TO TRANSFER AND VACATING MOTION TO DISMISS**<br><br>[Dkts. No. 16 & 17] |

**I. BACKGROUND**

Defendant i-Health develops, markets and distributes dietary supplements under the BrainStrong brand. (Parris Decl. ¶ 2.) Defendant is incorporated in Delaware, with its main offices located in Cromwell, Connecticut. (Parris Decl. ¶ 3.) The scientific team that helped research and develop the BrainStrong products is located in Columbia, Maryland. (Parris Decl. ¶ 4.) BrainStrong dietary supplements are fortified with highly processed fermented algae. (Second Amended Complaint ("SAC") ¶ 1). The four dietary supplements under the BrainStrong brand are (1) BrainStrong Prenatal, (2) BrainStrong Toddler, (3) BrainStrong Kids, and (4) BrainStrong Adults.

(SAC n.1.)  This action focuses on three of the four products: BrainStrong Toddlers, BrainStrong Kids, and BrainStrong Adults (the "Products").  (SAC ¶ 12.)

In December 2011, Plaintiff Amy Jovel ("Jovel") purchased one box of BrainStrong Kids from a Wal-Mart in Los Angeles.  (SAC ¶ 10.)  Prior to the purchase, Jovel saw Defendant's advertisements claiming that the Products support brain health in adults and children.  (SAC ¶ 10.)  She also read the product label reaffirming the advertised claims.  (SAC ¶ 10.)  Relying on these claims, Jovel purchased BrainStrong Kids for her daughter, paying approximately $15.  (SAC ¶ 10.)

Jovel gave the product to her daughter as directed, and but found that the BrainStrong Kids product did not support brain health as represented.  (SAC ¶ 10.)  She alleges that Defendant has conveyed the message to consumers in a nationwide marketing campaign that its Products provide an essential DHA algal oil daily supplement that "supports brain health and function in children and adults."  (SAC ¶ 14.)  Plaintiff claims that the front and back panels of every product package emphasize the DHA algal oil and its ability to support brain health.  (SAC ¶¶ 20-21.)  The BrainStrong Toddlers and Kids packaging states that the product "[s]upports brain development and function," while the Adult packaging states that the product is "clinically shown to improve memory," "naturally supports mental clarity" and "helps protect against normal cognitive decline."  (SAC ¶ 1.)  Defendant has employed numerous methods to convey its uniform brain health representations to consumers via the "BrainStrong" name, the Defendant's website, online and print materials, and the prominent statements on the Products' packaging.  (SAC ¶ 3.)

2

Jovel originally filed this action in Superior Court of California, Los Angeles County on March 16, 2012, asserting claims on behalf of a putative class of California consumers. (Hawk Decl. ¶ 1.) On March 27, 2012, Michael Yee ("Yee"), represented by different counsel, filed a similar complaint in the Eastern District of New York, Yee v. i-Health ("the Yee action"), Case No. CV12-1504. (Hawk Decl. ¶ 2.) The Yee action asserted claims on behalf of a putative nationwide class. (Hawk Decl. ¶ 2.) Once i-Health's counsel became aware of the similar complaints, i-Health's counsel asked the counsel for Yee and Jovel to agree to combine their two cases into a single venue. (Hawk Decl. ¶ 3.) Counsel for i-Health state that their intention was to remove the Jovel action to federal court so as to bring both actions before the same court in a motion to transfer. (Hawk Decl. ¶ 6.) Jovel's counsel then amended the Complaint in order to assert claims on behalf of a nationwide class. (Hawk Decl. ¶ 5.) On July 31, 2012, the Yee action was voluntarily dismissed, and on August 10, 2012, counsel for the Yee action formally associated with counsel for Jovel.

**II. LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As a threshold matter, the court must first determine if venue in the requested district would have been proper. If so, the court must consider "the convenience of the parties, the convenience of the witnesses, and interest of justice." E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994).

**III. DISCUSSION**

　　A. Proper Venue

　　The court first considers whether this suit could have been brought in the Eastern District of New York and finds that this threshold question has been met. Venue in a diversity action is proper in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

　　Here, the first two tests are not met. Defendant is a Delaware corporation with headquarters in Connecticut, and the claim is based on a single purchase by Plaintiff of one box of BrainStrong Kids from a WalMart in Los Angeles, California.

　　However, the Eastern District of New York does have personal jurisdiction over Defendant. Personal jurisdiction over a corporation may arise where a defendant has "'substantial' or 'continuous and systematic' contacts with the forum state, even if the case is unrelated to those contacts." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1171 (9th Cir. 2006). To determine whether contacts are sufficient, "[w]e consider, among other factors, whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. It is the nature and extent of the contacts that determines whether they are

'substantial' or 'continuous and systematic.'" Id. at 1172 (internal citations omitted).

Here, Defendant sold approximately 80,000 units of the BrainStrong product in New York since March 2011 to major retail sellers including Wal-Mart, Target, and Rite Aid. (Lewis Decl. ¶ 3.) Defendant also ships BrainStrong products to wholesalers in New York who sell to small and independent retailers in New York.[1] Id. Defendant has spent $9.8 million on nationwide advertising, including magazines and television advertisements in New York, although it is not clear what percentage of the advertising appeared in New York. (Lewis Decl. ¶ 4.) In addition to the BrainStrong brand, Defendant sells over 20 other products in New York, including AZO products, Culturelle products, and Estroven products. (Lewis Decl. ¶ 5.)

Plaintiff argues that venue in the Eastern District of New York is inappropriate because Defendant "does not even begin to approach sufficient contacts with New York to accord general jurisdiction and make venue appropriate." (Opp. At 8.) The court disagrees. The sale of 80,000 units of BrainStrong, in addition to an unspecified number of over 20 other products, along with magazine and television advertising, constitutes "significant and continuous ties" with New York.

"[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-478 (1985). Here, Plaintiff asserts that the venue is inappropriate because the claim that is the basis of the lawsuit – Plaintiff's purchase of one box of

---

[1] It is unclear whether the sales to wholesalers are included in the 80,000 units.

BrainStrong Kids from a Wal-Mart – arose in Los Angeles. Given the fact that the suit is a nationwide class action, and that the claim is based on the purchase of the product from a Wal-Mart, which is likely to be similar no matter in what state, the court finds that the contacts Defendant has with the Eastern District of New York are not defeated by any issues of "fair play and substantial justice."

B.   Section 1404(a) Factors

Since Defendant has passed the threshold question establishing that this action could have been brought either in the Central District of California or in the Eastern District of New York, the Court must consider (1) the convenience to the parties, (2) the convenience to the witnesses, and (3) the interest of justice. 28 USC § 1404(a).

1. Convenience to the Parties

Convenience to the parties and witnesses is a fundamental consideration underlying a transfer request.

Defendant asserts that it would be far less burdensome and less costly for i-Health to litigate these cases in New York, as opposed to California because its offices and executive team are all located in Cromwell, Connecticut. (Parris Decl. ¶ 3.) Defendant has no offices in California or anywhere west of the Mississippi. (Parris Decl. ¶ 5.) Plaintiff responds with the assertion, not supported by evidence in the form of a declaration, that she is "employed in Los Angeles, raises her children in Los Angeles and cares for her elderly parents in Los Angeles." (Opp. at 15.) She claims, further, that she is "a key witness in this litigation; the only person that can testify to her actual claim" and that she should not have to "shoulder the burden

of traveling to New York for trial and trial preparation, especially since her employer is not party to this litigation." Id.

"Although great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)(citations omitted). Although Plaintiff would have some role in a trial, it would not be nearly as significant as that of Defendant, its executives, and its scientists. Indeed, it is not clear to the court what Plaintiff would testify about beyond the fact of her purchase, since the gravamen of the Complaint is the falsity of the claims on the package, which would not be a subject of Plaintiff's testimony.

Furthermore, the court notes that in the sequence of events surrounding the Yee action and the amending of Plaintiff's complaint, there is a suggestion of forum shopping. Defendant notified Plaintiff that it intended to move to stay the Jovel action based on the pendency of Yee. (Hawk Decl. ¶ 4.) In response, Plaintiff's counsel announced their intent to assert claims based on a nationwide class, instead of the original California class. (Id. ¶ 5.) After the Second Amended Complaint was filed in Jovel, asserting the nationwide class, Defendant removed Jovel to the Central District of California. (Id. ¶ 6.) At that point, Defendant advised Plaintiff that it intended to move to consolidate the Jovel and Yee actions in the Eastern District of New York. (Id. ¶ 7.) Four days later, the Yee counsel advised Defendant "that he had reached agreement with Plaintiff's counsel in Jovel about jointly proceeding with the action against i-Health, that he was voluntarily dismissing the Yee action in the Eastern District of New York, and that Yee's claims would go

forward in California in this Court." (Id. ¶ 8.) It thus appears to the court as if, faced with the impending consolidation of the two actions in the Eastern District of New York, Plaintiff and the Yee counsel may have determined that the California forum would be preferable. Plaintiff is correct that there is no conclusive evidence of forum shopping. However, there is a suggestion of it based on the chronology. The court finds that under these circumstances it is appropriate to give less deference to Plaintiff's choice of forum.

2. Convenience of Witnesses

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1440(a)." Saleh v. Titan Corp., 361 F.Supp.2d 1152, 1160 (2005)(internal quotation marks and citations omitted). In balancing the convenience of the witnesses, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." Metz v. U.S. Life Ins. Co. in City of New York, 674 F.Supp.2d 1141, 1147 (C.D.Cal. 2009). See also Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984)(in a forum non conveniens case, "the district court improperly focused on the number of witnesses in each location" and should instead have "examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum.")

All of Defendant's witnesses are employees and are located on the East Coast. The i-Health executive team members work and live in or near Cromwell, Connecticut, while its scientific team works and live in or near Columbia, Maryland. The executive team consists of i-Health's President and Vice President and Brand Manager for BrainStrong products. (Parris Decl. ¶ 3.) The scientific team

includes the Associate Director of Clinical Research, the Corporate Scientist for Nutritional Lipids, the Project Manager for Scientific Affairs, and the Manager of Scientific Affairs. (Id. ¶ 4.) Defendant states in its motion that these team members are potential witnesses who will address Plaintiff's allegations that BrainStrong's labeling claims lack scientific substantiation. (Mot. at 7.) The fact that these witnesses are employees means that the court gives this preference less deference. Allstar Mktg. Grp., LLC v. Your Store Online, 666 F.Supp.2d 1109, 1132 (C.D. Ca. 2009) ("The court accords less weight to the inconvenience of party witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated"). Nonetheless, since they are the key witnesses, the court takes seriously the inconvenience to them.

Defendant contends that since all of their witnesses are located in Connecticut and Maryland, the Eastern District of New York is a convenient midpoint between the two states. Defendant argues that it would be more convenient for those witnesses to take a short car ride or train ride into New York than travel across the country. Cross country travel would result in substantial productive time loss and expenses for the witnesses, "almost two full days of lost productivity per trip for travel time on top of whatever additional time is required for trial or pre-trial preparation and appearances." (Parris Decl. ¶ 5.) Defendant contends further that all of i-Health's relevant scientific documents, both electronic and hard copy, are located in Columbia, Maryland. (Id. ¶ 4.)

On other hand, Plaintiff has not stated which, if any, of her witnesses are located in California. This is not something she is compelled to do at this time. Nonetheless, the court notes that

9

Plaintiff has not identified any witnesses besides herself located in California.  See Clip Ventures LLC v. Suncast Corp., No. C 10-04849 CRB, 2011 WL 839402, at *3, (N.D. Cal. March 7, 2011) (Plaintiff "has not identified a single witnesses that would be called from outside of Illinois.  Therefore, one of the two parties and *all foreseeable witnesses* are located in the Northern District of Illinois. This factor favors transfer.").  Furthermore, as noted above, Plaintiff's testimony would appear to be far less central to the case than the testimony of the i-Health executive and scientific teams.  Finally, a nationwide class action is by its nature an action that covers the nation, so it is to be expected that some class members would be required to travel no matter the ultimate forum.  The fact that Plaintiff's attorneys hail from across the country (Arizona, California, Illinois, Pennsylvania, and New York) is indicative of the case's scope.

The court finds that the convenience of witnesses weighs heavily in favor of Defendant.

### 3. Interest of Justice

"Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-499 (9th Cir. 2000) (internal quotation marks and citations omitted).

Although a plaintiff's choice of forum generally receives deference in a motion to transfer, Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986), this choice may be given less weight in a class action. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). "In judging the weight to be accorded [a class action plaintiff's] choice of forum, consideration must be given to the extent of both [Plaintiff's and Defendant's] contacts with the forum, including those relating to [Plaintiff's] cause of action. If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [Plaintiff's] choice is entitled to only minimal consideration." Id.

Here, although it is undisputed that Plaintiff filed the case in her home District and that the transaction occurred in the District, the crux of the case lies not in her act of purchasing the product in Los Angeles, but instead in issue of the alleged misrepresentations, which she would have perceived in identical form in any state. Thus, the fact that the "operative facts" occurred in Los Angeles has little weight. Additionally, while California does have an interest in enforcing its own consumer protection laws, the Second Amended Complaint alleges violations of the laws of a number of other states as well, including New York. (SAC ¶¶ 69, 75, alleging violations of, inter alia, N.Y. Gen. Bus. Law §349 et seq. and N.Y. U.C.C. Law §2-

11

313.)  Thus California's interest is no stronger than that of New York.

Considering the facts and circumstances of this particular case, the court finds that Plaintiff's choice of forum should be given little deference, since it is a class action based on operative facts that are likely to be repeated in an identical fashion in every forum. The court is not convinced that Plaintiff's claim would be different if she had purchased a box of BrainStrong in a Wal-Mart in New York instead of Los Angeles.  On the other side is a very clear gain in convenience to Defendant's witnesses and to the production of documents.  While the Eastern District of New York is not Defendant's forum of residence, New York does have personal jurisdiction over the Defendant, and the District is at a midpoint between Defendant's executive and scientific offices.  Weighing all factors, the court finds that convenience and fairness are better served by transfer to the Eastern District of New York.

## IV. CONCLUSION

For these reasons, the court GRANTS Defendant's Motion to Transfer and VACATES Defendant's Motion to Dismiss as moot.
IT IS SO ORDERED.

Dated: November 8, 2012

DEAN D. PREGERSON
United States District Judge