**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AMY JOVEL and MICHAEL YEE, On Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>I-HEALTH, INC., a Delaware Corporation<br><br>    Defendant. | Case No.:   1:12-cv-05614-JG-JMA<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Amy Jovel and Michael Yee (collectively "Plaintiffs"), by their undersigned attorneys, on behalf of themselves and all others similarly situated (the "Class," as defined below), based on personal knowledge as to themselves and upon information and belief as to all other matters, bring this class action against I-Health Inc. ("I-Health" or "Defendant") and, for their Third Amended Class Action Complaint, allege as follows:

### NATURE OF ACTION

1. Defendant manufactures, markets, sells and distributes BrainStrong, a line of four dietary supplements fortified with highly processed fermented algae.[1]  Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendant claims that taking its BrainStrong products will support brain health.  On each and every BrainStrong Toddler and Kids package, where it cannot be missed by consumers, Defendant prominently states that BrainStrong "Supports brain development and function".  Similarly, on each and every BrainStrong Adult package, Defendant represents that the product is "clinically shown to improve memory", "naturally supports mental clarity" and "helps protect against normal cognitive decline" (hereinafter "the brain health representations").  The brain health representations appear

---

[1] These products include: (1) BrainStrong Prenatal; (2) BrainStrong Toddler; (3) BrainStrong Kids; and (4) BrainStrong Adults.  This lawsuit concerns only three of the products -- BrainStrong Toddler, BrainStrong Kids and BrainStrong Adults (collectively "BrainStrong" or "the Products").

prominently on the front of each and every BrainStrong box.

2.      In truth, the BrainStrong products do not support brain health in children or adults. Clinical cause and effect studies have consistently found no causative link between DHA algal oil supplementation and brain health.  Defendant's representations are false, misleading, and reasonably likely to deceive the public.

3.      Defendant has employed numerous methods to convey its uniform, deceptive brain health representations to consumers, starting with the Products' "BrainStrong" name, its website and in its online and print promotional materials and, importantly, prominently on the front and center of the Products' packaging where the brain health representations cannot be missed by consumers.  The only reason a consumer would purchase BrainStrong is to obtain the advertised brain health benefits, which are the only represented benefits and which the Products do not provide.

4.      As a result of Defendant's deceptive brain health representations, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that do not perform as advertised.

5.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased BrainStrong to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products.  Based on violations of state unfair competition laws (detailed below) and breach of express warranties, Plaintiffs seek injunctive and monetary relief for consumers who purchased BrainStrong.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this nationwide class action arising under the Class Action Fairness Act of 2005, 28 U.S.C. §1332 (the Act).  The Act provides for original jurisdiction in the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and in which the amount in controversy

- 2 -

exceeds in the aggregate five million dollars ($5,000,000), exclusive of interest and costs.  The total number of the proposed Class is greater than 100.

7.      Plaintiffs allege that the total claims of individual Class members, in the aggregate, exceed five million dollars ($5,000,000), as required by 28 U.S.C. §1332(d)(2) & (5), and a member of the Class of plaintiffs is a citizen of a state different from any defendant.  Therefore, diversity of citizenship exists as required by 28 U.S.C. §1332(d)(2).

8.      Venue is proper in this District pursuant to the November 8, 2012 Transfer Order signed by the Honorable Dean D. Pregerson, United States District Judge of the United States District Court, Central District Of California (Dkt. No. 25).

## PARTIES

9.      Plaintiff Amy Jovel resides in Los Angeles County, California.  In or around December 2011, Plaintiff Jovel purchased one box of BrainStrong Toddler from a Wal-Mart in Pico Rivera, California.  Prior to purchasing BrainStrong Toddler, Plaintiff Jovel was exposed to and saw Defendant's advertisements claiming that the Products support brain health in children. Prior to purchasing the Product, Plaintiff also read the BrainStrong Toddler label reaffirming the claims she saw in the advertisements.  Relying on these claims, Plaintiff Jovel purchased BrainStrong Toddler, believing the Product supported brain health. She paid approximately $10-$15 for the Product.  Plaintiff gave the Product to her daughter once as directed.  Thereafter, in or around December 2011, Plaintiff Jovel purchased one box of BrainStrong Kids from a Wal-Mart in Pico Rivera, California.  Prior to purchasing BrainStrong Kids, Plaintiff Jovel was exposed to and saw Defendant's advertisements claiming that the Products support brain health in children. Prior to purchasing the Product, Plaintiff also read the BrainStrong Kids label reaffirming the claims she saw in the advertisements.  Relying on these claims, Plaintiff Jovel purchased BrainStrong Kids, believing the Product supported brain health.  She paid approximately $10-$15 for the Product.  Plaintiff gave the Product to her daughter as directed.  The BrainStrong Kids product Plaintiff purchased does not support brain health as represented.  As a result, Plaintiff

suffered injury in fact and lost money. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, she would not have purchased BrainStrong Toddler or BrainStrong Kids.

10. Plaintiff Michael Yee is a resident of Brooklyn, New York. In or around February of 2012, Plaintiff Yee purchased one box of BrainStrong Adult from a Walgreens in Brooklyn, New York. Prior to purchasing BrainStrong Adult, Plaintiff Yee was exposed to and saw Defendant's advertisements claiming that the Products support brain health. Prior to purchasing the Product, Plaintiff Yee also read the BrainStrong Adult label reaffirming the claims he saw in the advertisements. Relying on these claims, Plaintiff Yee purchased BrainStrong Adult, believing the Product supported brain health. He paid approximately $30 for the Product. Plaintiff Yee used the Product as directed. The BrainStrong Adult product Plaintiff Yee purchased does not support brain health as represented. As a result, Plaintiff Yee suffered injury in fact and lost money. Had Plaintiff Yee known the truth about Defendant's misrepresentations and omissions, he would not have purchased BrainStrong Adult.

11. Defendant I-Health, Inc ("I-Health") is a corporation organized and existing under the laws of the state of Delaware. I-Health's headquarters is at 55 Sebethe Drive, Suite 102, Cromwell, Connecticut 06416. Defendant I-Health manufactured, advertised, marketed, distributed and sold the BrainStrong products throughout the United States, including California.

## FACTUAL ALLEGATIONS

### *The BrainStrong Products*

12. Since April 2011, Defendant has manufactured, distributed, marketed and sold its BrainStrong products throughout the United States, including California. This lawsuit concerns three of those products: (1) BrainStrong Toddler; (2) BrainStrong Kids; (3) and BrainStrong Adults.

13. Defendant's BrainStrong products are sold in virtually every major food, drug, and mass retail outlet in the country. The Products retail for approximately $15-$30. The following

- 4 -

are screen shots of the Products:



14.     Since the Products' launch, Defendant has consistently conveyed the message to consumers throughout California that its BrainStrong products provide an essential daily supplement fortified with DHA algal oil that "supports brain health and function" in children and adults.  They do not.  Defendant's brain health representations are false, misleading and deceptive.

15.     All three BrainStrong products contain "life's DHA".   DHA is a long-chain omega-3 fatty acid typically found in cold water fish.  The DHA in Defendant's BrainStrong products is not derived from fish oil.  Instead, the DHA oil in Defendant's products is an immature short-chain omega-3 fatty acid made from an extract of mutated and fermented algae. Contrary to Defendant's representations made on each and every Product package, DHA algal oil does not support brain health.

16.     The one and only "reference" appearing on any of the Products is on the BrainStrong Adult label, purportedly supporting Defendant's "clinically shown to improve memory" representation.   But, no identifying information is included with the "reference" to enable consumers to locate and review the "reference".  The "reference" is not competent and reliable scientific support for Defendant's brain health representation.

17.     In truth, clinical cause and effect studies establish that Defendant's brain health

- 5 -

representations are deceptive.  For example, in Kirby, A., et al., *A Double-Blind, Placebo-Controlled Study Investigating the Effects of Omega-3 Supplementation in Children Aged 8-10 Years from a Mainstream School Population*, 31(3) Research in Developmental Disabilities 718-30 (2010),  the study authors examined the effects of fish oil DHA supplementation on 450 students (ages 8-10 years old) for 16 weeks.  *Id.* at 720.  The study authors found that despite the wide range of cognitive and behavior outcomes used, DHA supplementation resulted in no significant differences in cognitive results:  "very few significant differences between the supplemented and placebo group on the learning and performance measures used."  *Id.* at 729.

18.     Similarly, a 2008 study funded by Martek Biosciences, the manufacturers of the Life's DHA in the Products, concluded that there was no statistically significant difference between the DHA and placebo group in cognitive function.  *See* Ryan, A., et al., *Assessing the Effect of Docosahexaemoic Acid on Cognitive Functions in Healthy Preschool Children*, 47(4) Clin. Pediatr. 355-62 (2008) (the Ryan Study).[2] *See also* Eilander, A., et al., *Effects of n-3 long chain polyunsaturated fatty acid supplementation on visual and cognitive development throughout childhood: a review of human studies*, 76(4) J. Prostaglandins, Leukotrienes and Essential Fatty Acids 189-203 (Apr. 2007) ("Evidence for benefits of n-3 LCPUFA on cognitive development in healthy children older than 2 years of age is too limited to allow a clear conclusion.").

19.     These and other competent and reliable scientific studies have found no cause and effect relationship between intake of dietary supplements with DHA algal oil and cognitive development.  Defendant's brain health representations are false and misleading and reasonably likely to deceive the average consumer.

20.     Despite the lack of any competent and reliable scientific evidence that DHA algal oil supplementation supports brain health and the evidence that it does not, each and every Product package repeatedly emphasizes that the BrainStrong products support brain health.  Each and every consumer who purchases the Products is exposed to these deceptive brain health representations,

---

[2] This study examined 175 4-year old children who received either 400 mg/d of DHA derived from the microalgae *Schizochytrium* spp or a placebo in capsules for 4 months.

which appear prominently and conspicuously on the front of the Products' packaging:



21.     And, the entire backside panel is dedicated to promoting the DHA algal oil in Defendant's Products and its purported ability to support brain health:



Copies of all the BrainStrong product labels are attached hereto as Exhibit A.

***The Impact of Defendant's Wrongful Conduct***

22.     Despite inadequate and inapposite testing, Defendant continues to unequivocally claim that its Products support brain health and function for children and adults alike.

23.     As the manufacturer and distributor of the BrainStrong products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Products and is in a superior position to learn of the effects - and has learned of the effects - its Products have on consumers.

24.     Specifically, Defendant knew or should have known, but failed to disclose that its Products do not support brain health, that it has no competent and reliable scientific evidence that BrainStrong works as represented and that well conducted, clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

25.     Nonetheless, Defendant conveyed and continues to convey one uniform message through its advertising campaign: BrainStrong supports brain health in children and adults.

- 8 -

26.     Plaintiffs and Class members have been and will continue to be deceived or misled by Defendant's deceptive brain health representations.  Plaintiffs purchased and consumed the Product during the relevant time period and in doing so, read and considered the Product labels and based their decision to buy the Product on the brain health representations.  Defendant's brain health representations and omissions were a material factor in influencing Plaintiffs' decision to purchase the Products.  Plaintiffs would not have purchased the Products had they known that Defendant's claims were false and misleading, that Defendant did not possess competent and reliable scientific evidence to support its brain health representations, and that clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

27.     As a result, Plaintiffs and the Class members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Defendant's representations, supported brain health, when, in fact, they do not.

28.     Defendant, by contrast, reaped enormous profits from its false marketing and sale of these products.

### CLASS DEFINITION AND ALLEGATIONS

29.     Plaintiffs seek to represent a Multi-State class defined as all consumers in California, New York and states with similar state consumer protection laws who purchased BrainStrong Toddler, BrainStrong Kids and/or BrainStrong Adult (the "Class").  Excluded from the Class are persons who made such purchase for the purpose of resale.

30.     Plaintiff Jovel also seeks to represent a subclass of all Class members who purchased BrainStrong Toddler, BrainStrong Kids and/or BrainStrong Adult in California (the "California Subclass").

31.     Plaintiff Yee also seeks to represent a subclass of all Class members who purchased BrainStrong Toddler, BrainStrong Kids and/or BrainStrong Adult in New York (the "New York Subclass").

32.     Members of the Class and Subclasses are so numerous and geographically dispersed that joinder of all members individually is impracticable. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

33.     The disposition of Plaintiffs' and proposed Class members' claims in a class action will provide substantial benefits to both the parties and the Court.

34.     The proposed Class and Subclasses are ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class member were infringed or violated in a similar fashion based upon Defendant's uniform warranties and misrepresentations and material omissions about its BrainStrong products.

35.     The questions of law and fact common to the proposed Class predominate over questions that may affect particular proposed Class members.  Common questions of fact and law include, but are not limited to, the following:

(a)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(b)     whether Defendant's alleged conduct violates public policy;

(c)     whether the alleged conduct constitutes violations of the laws asserted;

(d)     whether Defendant engaged in false or misleading advertising;

(e)     whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

(f)     whether Plaintiffs and Class members are entitled to restitution and disgorgement of damages; and

(g)     whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

- 10 -

36.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

37.     Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses because, *inter alia*, all Class members were injured through the uniform misconduct described above, and were subject to Defendant's deceptive brain health representations, including the deceptive brain health representations that accompanied each and every box of BrainStrong. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclasses.

38.     Plaintiffs are willing and prepared to serve the Court and the proposed Class and Subclasses in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and have no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

39.     The interests of the Plaintiffs are co-extensive with, and not antagonistic to, those of the absent Class members.  Plaintiffs will undertake to represent and protect the interests of the absent Class members.

40.     Plaintiffs have engaged the services of counsel indicated below.  Counsel are experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise will represent the plaintiff and absent Class members.

41.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiffs and Class members.

42.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.  Unless a Class-wide injunction is

issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

43.     Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
## Breach of Express Warranty

44.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

45.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class, California Subclass, and New York Subclass against Defendant.

46.     The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

47.     At all times, the following 20 states, including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the express warranty of merchantability:   Alabama (Ala. Code 1975 §7-2-313); Alaska (Alaska Stat. §45.02.313); California (Cal. Com. Code §2313); Colorado (Colo. Rev. Stat. Ann. §4-2-313); Connecticut (Conn. Gen. Stat. §42a-313); Hawaii (Haw. Rev. Stat. §490:2-313); Indiana (Ind. Code. Ann. §26-1-2-313); Kansas (Kans. Stat. Ann. §84-2-313); Maryland (Md. Code Ann., Com. Law. §2-313); Massachusetts (Mass. Gen. Laws ch. 106, §2-313); Missouri (Mo. Rev. Stat. §400.2-313); New Jersey (N.J. S.A. §12A:2-313); New York (N.Y. U.C.C. Law §2-313); North Carolina (N.C. Gen. Stat. §25-2-313); Ohio (Ohio Rev. Code Ann. §1302.26); Pennsylvania (13 Pa. Const. Stat. §2313); Virginia (Va. Code Ann. §8.2-313); Washington (Wash. Rev. Code. Ann. §62A.2-313); Washington D.C. (D.C. Code §28:2-313); and Wisconsin (Wis. Stat. Ann. §402.313).

48.     Defendant expressly warranted on each and every box of BrainStrong that the Products "support brain development and function" in children and adults alike.  The brain health

representations made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's brain health representations.

49.     All conditions precedent to Defendant's liability under these statutes have been performed by Plaintiffs and the Class.

50.     Defendant was provided notice of these issues by, *inter alia*, the instant Complaint and its predecessors.

51.     Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a Product that would support brain health as represented.

52.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the price of the Products they purchased.

**COUNT II**
**Violation of Business & Professions Code §17200, *et seq.***

53.     Plaintiffs repeat and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

54.     Plaintiff Jovel brings this claim individually and on behalf of the California Subclass.

55.     As alleged herein, Plaintiff Jovel have suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased the Product in reliance on Defendant's brain health representations, but did not receive a product that supports brain health.

56.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.   In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200,

- 13 -

*et seq.*, 17500, *et seq.*, and the common law.

57.     Plaintiff Jovel and the California Subclass reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

58.     Defendant's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engaged in false advertising, misrepresented and omitted material facts regarding its BrainStrong products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

59.     As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq*.

60.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

61.     Business & Professions Code §17200, *et seq*., also prohibits any "fraudulent business act or practice."

62.     Defendant's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq*.

63.     Plaintiff Jovel and the other California Subclass members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

64.     As a result of its deception, Defendant has been able to reap unjust revenue and profit.

65.     Unless restrained and enjoined, Defendant will continue to engage in the above-

described conduct. Accordingly, injunctive relief is appropriate.

66.     Plaintiff Jovel, on behalf of herself, all others similarly situated, and the general public, seeks restitution of all money obtained from her and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT III
### Violations of the Consumers Legal Remedies Act –
### Civil Code §1750 *et seq.*

67.     Plaintiffs repeat and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

68.     Plaintiff Jovel brings this claim individually and on behalf of the California Subclass.

69.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiff is a consumer as defined by California Civil Code §1761(d).  The BrainStrong products are "goods" within the meaning of the Act.

70.     Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the BrainStrong products:

      (5)     Representing that [the BrainStrong products have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

                  *         *         *

      (7)     Representing that [the BrainStrong products are] of a particular standard, quality or grade . . . if [they are] of another.

                  *         *         *

      (9)     Advertising goods . . . with intent not to sell them as advertised.

                  *         *         *

- 15 -

(16)     Representing that [the BrainStrong products have] been supplied in accordance with a previous representation when [they have] not.

71.     Defendant violated the Act by representing and failing to disclose material facts on the BrainStrong labels and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

72.     Pursuant to California Civil Code §1782(d), Plaintiff and the California Subclass seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

73.     Pursuant to §1782 of the Act, by letter dated March 16, 2012, Plaintiff Jovel notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.

74.     Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiffs further seek actual, punitive and statutory damages.

75.     Defendant's conduct is fraudulent, wanton and malicious.

**COUNT IV**
**Violation of New York General Business Law § 349**

76.     Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

77.     Plaintiff Yee brings this claim on behalf of himself and the members of the proposed New York Subclass against Defendant.

78.     I-Health engaged in making false and misleading marketing and advertising claims, representing that BrainStrong was "clinically shown to improve memory," "naturally supports

mental clarity," and "helps protect against normal cognitive decline," when in fact these claims lack legitimate scientific basis concerning the efficacy of BrainStrong.

79.    As set for above, by advertising, marketing, distributing and/or selling BrainStrong to Plaintiffs, the Class and the New York Subclass, I-Health engaged in, and continues to engage in, unfair or deceptive acts and practices.

80.    The foregoing deceptive acts and practices were directed at consumers.

81.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the BrainStrong Products to induce consumers to purchase same.

82.    Plaintiff Yee and members of the New York Subclass were injured because (a) they would not have purchased the BrainStrong Products had they known that Defendant's claims were false and misleading, that Defendant did not possess competent and reliable scientific evidence to support its brain health representations, and that clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

83.    On behalf of himself and other members of the New York Subclass, Plaintiff Yee seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT V**
**Violation of New York General Business Law § 350**

84.      Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

85.      Plaintiff Yee brings this claim on behalf of himself the Class and the New York Subclass under New York law.

86.    I-Health engaged in making false and misleading marketing and advertising claims, representing that BrainStrong was "clinically shown to improve memory," "naturally supports

mental clarity," and "helps protect against normal cognitive decline," when in fact these claims lack legitimate scientific basis concerning the efficacy of BrainStrong.

87.     New York G.B.L. § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

88.     As set for above, by advertising, marketing, distributing and/or selling BrainStrong to Plaintiffs, the Class and the New York Subclass, I-Health engaged in, and continues to engage in, false advertising.

89.     Plaintiffs and other members of the Class and the New York Subclass further seek to enjoin such false advertising as described above.  Each of the members of the Class and New York Subclass will be irreparably harmed unless the unlawful actions of I-Health are enjoined in that I-Health will continue to falsely and misleadingly advertise and market BrainStrong as "clinically shown to improve memory," "naturally supports mental clarity," and "helps protect against normal cognitive decline."  Therefore, Plaintiffs, the Class and the New York Subclass request an order granting them injunctive relief ordering appropriate disclosures and/or disclaimers in the advertising, marketing and promotion of BrainStrong.

90.     Absent such injunctive relief, I-Health will continue to advertise, market and sell BrainStrong as "clinically shown to improve memory", "naturally supports mental clarity" and "helps protect against normal cognitive decline," even though there is no legitimate scientific basis for I-Health's claims concerning the efficacy of BrainStrong, to the detriment of consumers.

91.     In this regard, I-Health has violated, and continue to violate, G.B.L. § 350, which makes deceptive acts and practices unlawful.  As a direct and proximate result of I-Health's violation of G.B.L. § 350 as alleged above, Plaintiffs and other members of the Class and the New York Subclass have suffered damages, in an amount to be determined at trial.

**COUNT VI**
**Violation of State Consumer Protection Laws**

92.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

93.     In the alternative to Counts II, III, IV and V above, Plaintiffs and the Class allege that I-Health violated the substantive consumer protection and unfair trade practice acts or statutes of all states whose laws do not materially conflict with each other for purposes of this action.

94.     By reason of the conduct alleged herein, by advertising and marketing BrainStrong in various media, including on the packaging and labeling, I-Health misled consumers about the brain health benefits of its Products.  I-Health intentionally engaged in these deceptive acts and made false and misleading representations and omitted material facts.

95.     While discovery may alter the following, Plaintiffs preliminarily aver that Defendant violated the laws prohibiting unfair and deceptive trade practices of the states and territories wherein Class members reside, including:  Cal. Bus. & Prof. Code §17200 et seq.; California Civil Code §1750 et seq.; Fla. Stat. §501.201 et seq.; Fla. Stat. §§817.06; 815 Ill. Comp. Stat. 502/1, et seq.; Mass. Gen. Laws ch.93A et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §8.31 et seq.; Missouri Stat. §407.010 et seq.; N.J. Rev. Stat. §56:8-1 et seq.; N.Y. Gen. Bus. Law §349 et seq.; and Wash. Rev. Code. §19.86.010 et seq.

96.     For example, the Washington Consumer Protection Act, Rev. Code § 19.86.020, declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." Defendant's marketing, advertising, labeling, packaging and sale of BrainStrong is "commerce" as defined by the Washington Consumer Protection Act. Rev. Code § 19.86.010(2).   Defendant violated the Washington Consumer Protection Act by representing through its advertisements that BrainStrong supports brain health when such representations and advertisements were false, and misleading. Defendant's conduct, including misrepresenting the efficacy of its Products in the course of

commerce had the capacity to and did inflict real injury and damage upon the Class. Rev. Code § 19.86.093. As a result of Defendant's unlawful conduct, the Class is entitled to judgment, full restitution and damages, including treble damages. Rev. Code § 19.86.090. Plaintiff and Class members are also entitled to costs, including attorneys' fees. *Id.*

97.    As a direct and proximate result of I-Health's statutory violations, Plaintiffs and Class members have been injured and suffered damages, including all monies paid for BrainStrong.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment:

A.    Certifying the Class and Subclasses as requested herein;

B.    Awarding Plaintiffs and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the proposed Class members;

D.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

E.    Awarding statutory and punitive damages, as appropriate.

F.    Ordering Defendant to engage in a corrective advertising campaign;

G.    Awarding attorneys' fees and costs; and

H.    Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action and issues so triable.

Dated: April 1, 2014                    Respectfully submitted,

By:    /s/ Patricia N. Syverson

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Elaine A. Ryan (*Admitted Pro Hac Vice*)
Van Bunch (*Admitted Pro Hac Vice*)
Patricia N. Syverson (*Admitted Pro Hac Vice*)

- 20 -

2325 E. Camelback Road, #300
Phoenix, AZ 85016
eryan@bffb.com
vbunch@bffb.com
psyverson@bffb.com
Telephone: (602) 274-1100

FARUQI & FARUQI, LLP
Nadeem Faruqi (NF-1184)
Juan E. Monteverde
Adam Gonnelli
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: nfaruqi@faruqilaw.com
        jmonteverde@faruqilaw.com
        agonnelli@faruqilaw.com

STEWART M. WELTMAN LLC
Stewart M. Weltman (*Admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
Telephone:  312-588-5033
sweltman@weltmanlawfirm.com
(Of Counsel Levin Fishbein Sedran & Berman)

LEVIN, FISHBEIN, SEDRAN & BERMAN
Howard J. Sedran (*To be admitted Pro Hac Vice*)
510 Walnut Street
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500


Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2014, I electronically filed the foregoing **THIRD AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic mail notice list, and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 1, 2014.

/s/Patricia N. Syverson
Patricia N. Syverson (203111)
BONNETT FAIRBOURN FRIEDMAN &
BALINT
2325 E Camelback Road, Ste. 300
Phoenix, AZ 85016
(602) 274-1100

- 22 -