**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

AMY JOVEL and MICHAEL YEE, On
Behalf of Themselves and All Others
Similarly Situated,

                 Plaintiffs,

     v.

I-HEALTH, INC., a Delaware Corporation

            Defendant.

Case No.:   1:12-cv-05614-JG-MDG

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES
AND EXPENSES, AND APPROVAL OF INCENTIVE AWARDS**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES...........................................................................................iv

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................ 4

III.    SUMMARY OF THE PROPOSED SETTLEMENT........................................ 7

        A.      Terms of the Proposed Settlement .......................................................... 7

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND
        SHOULD BE APPROVED BY THE COURT ............................................... 9

        A.      The Proposed Settlement Is Procedurally Fair.................................... 10

        B.      The Proposed Settlement Is Substantively Fair ................................. 11

                1.      Factor One: Given the Complexity, Expense And Likely Duration Of The
                        Litigation, Final Approval Is Appropriate ................................. 12

                2.      Factor Two: The Class' Favorable Reaction To The Settlement.............. 13

                3.      Factor Three: Discovery Has Advanced Far Enough To Allow The Parties
                        To Responsibly Resolve The Case ......................................... 14

                4.      Factors Four, Five, And Six: The Continued Litigation Risks Related To
                        Establishing Liability, Damages, And Maintaining A Class Action
                        Through Trial Support Settlement ......................................... 15

                5.      Factor Seven: i-Health's Ability To Withstand A Greater Judgment....... 16

                6.      Factors Eight And Nine: The Range Of Reasonableness Of The Settlement
                        In Light Of The Best Possible Recovery ................................. 16

V.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE...... 18

        A.      The Requirements Of Rule 23(a) Are Met ......................................... 19

i

1.     Numerosity ................................................................................ 19

2.     Commonality ............................................................................. 19

3.     Typicality ................................................................................. 20

4.     Adequacy ................................................................................. 21

B.     The Requirements Of Rule 23(b) Are Met .......................................... 22

1.     Common Questions Predominate .............................................. 22

2.     Class Treatment Is Superior To Alternative Methods Of Adjudication ... 23

VI.    THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS ......... 24

VII.   SETTLEMENT CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE .......................................................................... 25

A.     The Requested Award Is Presumptively Fair And Reasonable Where That Award Is Independent Of The Benefit Obtained For The Class ...................................... 25

B.     The Requested Award For Attorneys' Fees Is Reasonable Under The Appropriate Lodestar Method ........................................................................ 28

C.     An Analysis Of The *Goldberger* Factors Further Favors Approval Of Plaintiffs' Fee Request ........................................................................... 32

1.     Time And Labor Expended By Counsel ...................................... 32

2.     Magnitude And Complexity Of The Litigation ......................... 33

3.     The Risk Of Litigation ............................................................. 34

4.     The Quality Of Representation ................................................. 35

5.     The Request Fee In Relation To The Settlement ....................... 36

6.     Public Policy Considerations .................................................... 37

VIII.   SETTLEMENT CLASS COUNSEL'S EXPENSES ARE REASONABLE AND
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON
        BEHALF OF THE CLASS............................................................................................. 37

IX.     THE REQUESTED INCENTIVE AWARDS FOR CLASS REPRESENTATIVES ARE
        REASONABLE AND STANDARD................................................................................. 38

X.      CONCLUSION............................................................................................................. 40

## TABLE OF AUTHORITES

**Cases**                                                                                                  **Page(s)**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   MDL No. 1775, 2011 U.S. Dist. LEXIS 79786 (E.D.N.Y. July 15, 2011) ............................28

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................................18, 22, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013).............................................................................................22

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000).......................................................................................21

*Blum v. Stenson*,
   465 U.S. 886 (1984).............................................................................................29, 30

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
      Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007).......................................................................................19

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).......................................................................................19

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008).................................................................................20

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................................26, 40

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)...............................................................................16

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   No. 05-3452 (RLE), 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008)....................17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).................................................................................32, 37

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
   No. 05-05437 RBL, 2008 U.S. Dist. LEXIS 106515 (W.D. Wash. Apr. 24,
      2008) ................................................................................................................28

*Green v. City of New York*,
  No. 05-cv-429 (SLT)(ETB), 2009 U.S. Dist. LEXIS 86043 (E.D.N.Y. Sept.
  14, 2009) ............................................................................................................................28

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)...............................................................................................20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................................................................25, 27

*In re Initial Pub. Offering*,
  671 F. Supp. 2d at 515 .......................................................................................................31

*Jermyn v. Best Buy Stores, L. P.*,
  No. 08 Civ. 214 (CM), 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27,
  2012) ..............................................................................................................................28, 29

*Johnson v. Ga. Hwy. Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) .............................................................................................25

*Jovel v. i-Health, Inc.*,
  Case No. BC481048 (CA Super Ct. 2012) ...........................................................................4

*Krueger v. N.Y. Tel. Co.*,
  163 F.R.D. 433 (S.D.N.Y. 1995) .......................................................................................19

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship.*,
  168 F.R.D. 451 (E.D.N.Y. 1996) ......................................................................................23

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ.1262, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ...........................31

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997)...............................................................................................30

*In re Luxottica Grp. S.p.A. Secs. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................................10

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)...............................................................................................20

*Marsh & McLennan*,
  No. 04-8144 (CM), 2009 WL 5178546 ............................................................................31

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................31, 34, 35

*Massiah v. MetroPlus Health Plan, Inc.*,
  No. 11-cv-05669 (BMC), (E.D.N.Y. Nov. 20, 2012) ............................................37

*Massiah v. MetroPlus Health Plan, Inc.*,
  No. 11-cv-5669 (BMC), 2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 16,
  2012) ..............................................................................................................13, 14

*McAnaney v. Astoria Fin. Corp.*,
  No. 04-cv-1101 (JFB) (WDW), 2011 U.S. Dist. LEXIS 114768 (E.D.N.Y.
  Feb. 11, 2011) .................................................................................................39

*McBean v. City of N.Y.*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ......................................................................27

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)..............................................................................11

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................... *passim*

*Michalow v. E. Coast Restoration & Consulting Corp.*,
  No. 1:09-cv-5475 (SLT)(MDG), 2011 U.S. Dist. LEXIS 150414 (E.D.N.Y.
  Nov. 17, 2011) .................................................................................................19

*Miltland Raleigh-Durham v. Myers*,
  840 F Supp. 235 (S.D.N.Y. 1993) .....................................................................38

*Monaco v. Stone*,
  187 F.R.D. 50 (E.D.N.Y. 1999).........................................................................19

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002).............................................................................22

*In re Nasdaq Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................33

*In Re NTL, Inc. Sec. Litig.*,
  No. 02 Civ. 3013 (LAK) (AJP), 2007 U.S. Dist. LEXIS 13661 (S.D.N.Y. Mar.
  1, 2007) ...........................................................................................................34

*Parker v. Time Warner Entertainment Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...............................................................29

*Passeggio v. Cosmetique Inc.*,
  No. 1:98-cv-1774 (CPS), 1999 U.S. Dist. LEXIS 7607 (E.D.N.Y. Apr. 30,
  1999) ...............................................................................................................23

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
　　No. 05-md-1720 (JG)(JO), 2014 U.S. Dist. LEXIS 3351 (E.D.N.Y. Jan. 10,
　　2014)............................................................................................................................29

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
　　478 U.S. 546 (1986)....................................................................................................29

*In re Portal Software, Inc. Sec. Litig.*,
　　No. 03-cv-5138 (VRW), 2007 WL 4171201 (N.D. Cal. 2007)...............................31

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
　　237 F.R.D. 26 (E.D.N.Y. 2006)...................................................................................18

*Robidoux v. Celani*,
　　987 F.2d 931 (2d Cir. 1993)..................................................................................19, 20

*Rossini v. Ogilvy & Mather, Inc.*,
　　798 F.2d 590 (2d Cir. 1986)........................................................................................22

*Schiller v. David's Bridal, Inc.*,
　　No. 1:10-cv-00616 (AWI)(SKO), 2012 WL 2117001 (E.D. Cal. June 11,
　　2012) ..........................................................................................................................31

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
　　No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1,
　　2008) ..............................................................................................................26, 32, 37

*Spicer v. Pier Sixty LLC*,
　　No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) ....31

*Steinberg v. Nationwide Mut. Ins. Co.*,
　　612 F. Supp. 2d 219 (E.D.N.Y. 2009) ......................................................................26

*In re Telik, Inc. Sec. Litig.*,
　　576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................34

*Tiro v. Public House Invs., LLC*,
　　No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) ........9

*In re Visa Check/Mastermoney Antitrust Litig.*,
　　297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd*, *Wal-Mart Stores, Inc. v. Visa
　　U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................................................38

*In re Vitamin C Antitrust Litig.*,
　　No. 06-md-1738 (BMC)(JO), 2012 U.S. Dist. LEXIS 152275 (E.D.N.Y. Oct.
　　22, 2012) ............................................................................................................ *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................10

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ................................................................................10

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb.
   18, 2011) ...........................................................................................................15

*Yee v. i-Health, Inc.*,
   Case No. 1:12-cv-1504 (E.D.N.Y. 2012) .......................................................4, 5

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................4

28 U.S.C. § 1715 ....................................................................................................25

California's Consumers Legal Remedies Act, Civil Code §1750, *et seq.* ...................5

California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq.* ..................5

Class Action Fairness Act ...............................................................................7, 14, 25

New York General Business Law §§ 349 and 350 .....................................................5

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23(a) ........................................................................................ *passim*

Fed. R. Civ. P. 23(b) ...................................................................................18, 22, 23

Fed. R. Civ. P. 23(e)(2) ...........................................................................................9

Fed. R. Civ. P. 23(f) ...............................................................................................16

Fed. R. Civ. P. 23(h) ..............................................................................................25

Fed. R. Civ. P. 23(e) ...........................................................................................9, 24

Fed. R. Civ. P. 26(a)(1) ...........................................................................................4

Plaintiffs Amy Jovel and Michael Yee ("Plaintiffs"), respectfully submit this Memorandum of Law in Support of their motion for final approval of the Class Action Settlement, awarding attorneys' fees and reimbursement of expenses, and awarding the payment of incentive awards to the Plaintiffs (the "Motion").[1]

## I.    INTRODUCTION

Plaintiffs commenced this class action lawsuit against defendant i-Health, Inc. ("Defendant" or "i-Health") on behalf of themselves and all others similarly situated, seeking economic damages and prospective relief related to their purchase of Defendant's BrainStrong Products.[2] Plaintiffs alleged that Defendant misrepresented the efficacy of BrainStrong Products to support brain development and function, improve memory, support mental clarity, and protect against normal cognitive decline. Although Defendant denies all charges of wrongdoing or liability, the Parties have agreed to settle this matter upon the terms set forth in the Settlement Agreement, which was preliminarily approved by this Court on March 4, 2016 (the "Settlement").[3]

The Settlement provides meaningful and immediate economic relief in the form of cash refunds to Settlement Class Members. Specifically, Defendant has agreed to provide a full cash refund of the actual purchase price to Settlement Class Members who purchased one or more BrainStrong Products and submit a valid Claim Form along with a Proof of Purchase that documents the actual price paid for the Product. For Settlement Class Members who submit a valid Claim Form along with a Proof of Purchase that does not document the actual price paid,

---

[1] Defendant does not oppose Plaintiffs' Motion.

[2] BrainStrong Products consist of: BrainStrong Toddler, BrainStrong Kids, and BrainStrong Adult.

[3] All capitalized terms have the same definition as in the Settlement Agreement and Release and its exhibits, which are attached as Exhibit 1 to the Declaration of Patricia N. Syverson, filed concurrently with the Motion for Preliminary Approval of Class Action Settlement, ECF No. 109.

Defendant will provide a cash refund in the amount of the average retail price for every BrainStrong Product purchased by the claimant.[4]  For Settlement Class Members who submit a valid Claim Form under penalty of perjury, but without documentation of the purchase, Defendant will offer claimants $4.00 in cash value or $6.50 in voucher value.  Additionally, i-Health has discontinued the marketing and sale of BrainStrong Products, and has agreed to refrain from selling BrainStrong Products in the future unless any representations related to their health benefits, performance, safety or efficacy are supported by competent and reliable scientific evidence.

The Settlement reflects an excellent resolution of the parties' respective claims and defenses, is fair, reasonable, and falls within the range of possible approval.  The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case, as well as multiple in-person and telephonic court-monitored settlement conferences before then-Magistrate Judge Azrack and this Court between November 20, 2014 and March 13, 2015.  All Settlement Class Members are treated fairly under the terms of the Settlement.  Because Plaintiffs initially sought injunctive and monetary relief for Settlement Class Members based on their purchase of the Products, the provisions for monetary refunds and prospective relief under the Settlement are an excellent result for Class Members.  Indeed, Class Counsel achieved a substantial benefit for the Class and the likelihood that a greater result could be achieved at trial is remote.

The reaction of the Class supports approval of the Settlement.  Pursuant to the Court's Preliminary Approval Order, as described more fully below, a comprehensive nationwide notice program was implemented, including: direct e-mail notice, publication notice in *People*

---

[4] There is no limit on the number of refunds that Defendant will pay to Class Members who submit proof of purchase.

*Magazine* and *Time Magazine,* and Internet banner advertisements.  To date, 29,348 individual claim forms have been submitted.   Further, not a single objection has been submitted and only 18 Settlement Class Members have opted out.

Class Counsel requests that the Court approve a total payment of $250,000 as an award of attorneys' fees and as reimbursement of out-of-pocket expenses.   Declaration of Antonio Vozzolo in Support of Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Expenses, and Approval of Incentive Awards ("Vozzolo Decl."), ¶ 12.  As explained below, the lodestar technique confirms that the amount of attorneys' fees and expenses is fair, reasonable, and supported by the law of this Circuit. *See infra*. Class Counsel have collectively worked 1448.10 hours on this case for a total lodestar, at current billing rates, of $ 662,296.00.  Vozzolo Decl. ¶ 13, Ex. D; Declaration of Patricia N. Syverson ("Syverson Decl.") in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees, Costs and Expenses, and Approval of Incentive Awards (the "Syverson Decl.")., ¶ 8.  Furthermore, the expenses incurred were necessary to the prosecution of this case and were carefully and reasonably expended.  Vozzolo Decl. ¶ 69, Ex. E (summary of out-of-pocket expense incurred by Faruqi & Faruqi in connection with this case); Syverson Decl. ¶ 9 (same).  Rather than seeking their full lodestar plus expenses, Class Counsel has, after extensive negotiations with Defendant, agreed to request an award that represents a significant reduction to their estimated fees and expenses.  Vozzolo Decl. ¶¶ 13, 66.  This reduced request is presumptively reasonable and should be approved by this Court.  Finally, Plaintiffs Jovel and Yee request that the Court award them service awards in the amount of $1,000 each to account for the significant time and effort they invested in this case on behalf of the Class.

As shown below, the Settlement not only satisfies Rule 23's "fair, reasonable, and adequate" standard, it is an outstanding result for the Plaintiffs and the Settlement Class. The Court should grant final approval.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2012, Plaintiff Amy Jovel commenced a putative class action in the Superior Court of the State of California for the County of Los Angeles against Defendant in *Jovel v. i-Health, Inc*., Case No. BC481048 (the "*Jovel* Action"), in connection with i-Health's marketing and sale of BrainStrong Products. The action asserted claims on behalf of a putative class of California consumers. On March 27, 2012, Plaintiff Michael Yee commenced a putative class action in the United States District Court for the Eastern District of New York against Defendant in *Yee v. i-Health, Inc.*, Case No. 1:12-cv-1504 (the "*Yee* Action"), in connection with i-Health's marketing and sale of BrainStrong Products. The action asserted claims on behalf of a putative nationwide class. On May 30, 2012, Plaintiff Jovel filed an amended complaint to assert claims individually and on behalf of a putative nationwide class of consumers.

In June 2012, Defendant removed the *Jovel* Action from the Superior Court to the Central District of California. On July 31, 2012, the *Yee* Action was voluntarily dismissed, and counsel for the action formally associated with counsel in the *Jovel* Action on August 10, 2012. In August 2012, Defendant moved to transfer the *Jovel* Action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). The Honorable Dean D. Pregerson granted Defendant's motion to transfer the case on November 8, 2012.

On January 31, 2013, Defendant moved to dismiss the *Jovel* Action on several grounds. On September 27, 2013, this Court denied Defendant's Motion to Dismiss after oral argument by the parties. ECF No. 63. On October 21, 2013, Defendant answered the SAC, denying the allegations. On November 12, 2013, the parties exchanged their Rule 26(a)(1) initial disclosures.

Thereafter, parties engaged in extensive discovery, serving interrogatories, requests for production of documents, and requests for admission.  Plaintiffs' counsel personally reviewed and analyzed over 270,000 pages of documents produced by Defendant.  Vozzolo Decl. ¶ 27.

On April 1, 2014, Plaintiff Jovel amended her complaint to add: (1) Michael Yee (of the *Yee* Action) as a named plaintiff; and (2) a New York subclass. The third amended complaint against Defendant asserted claims for breach of express warranty, and violations of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., California's Consumers Legal Remedies Act, Civil Code §1750, *et seq*., and New York General Business Law §§ 349 and 350. On May 14, 2014, Defendant answered the third amended complaint, denying liability.

Thereafter, the parties initiated discussions regarding potential resolution.  On May 16, 2014, the parties requested a temporary stay so they could focus on settlement negotiations. This Court granted the request.  In conjunction with settlement negotiations, the parties also engaged in further informal discovery.  Defendant produced class data, which included the number of potential Class members, the total sales volume of BrainStrong Products in the United States, and wholesale prices of these products so that Plaintiffs' counsel could conduct their own damages analysis.  Vozzolo Decl. ¶ 29.  Moreover, Plaintiffs' counsel also consulted with multiple experts and industry personnel, and assessed the efficacy of DHA present in BrainStrong Products.  Vozzolo Decl. ¶ 33.

Following Plaintiffs' analysis of information and data, the parties engaged in extensive settlement negotiations. These discussions included, among other efforts, in-person and telephonic court-monitored settlement conferences before Magistrate Judge Joan M. Azrack on November 20, 2014 and December 11, 2014 and Magistrate Judge Marilyn D. Go on January 23, 2015, February 6, 2015 and March 13, 2015.  These efforts culminated in an agreement in

principle, which the parties then worked diligently to finalize in the form of the Stipulation of Settlement that was executed on January 29, 2016 and is the subject of the present motion. Vozzolo Decl. ¶¶ 29, 37.  Subsequent to reaching an agreement on the substantive terms of the Settlement, the Parties negotiated the attorneys' fees and expense provisions, as well as the provisions for class representative incentive awards.  Vozzolo Decl. ¶¶ 32, 77.

Defendant, while denying all allegations of wrongdoing and disclaiming all liability with respect to all claims, considers it desirable to resolve the action on the terms stated in the Settlement Agreement in order to avoid further expense, inconvenience and burden and, therefore, has determined that the Settlement is in i-Health's best interests.  *See* Stipulation of Settlement, ECF No. 109-1, ¶¶1.20-1.21.

On January 29, 2016, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement and Related Relief.   On March 4, 2016, the Court issued a Preliminary Approval order that: (1) preliminarily approved the Settlement, (2) provisionally certified a Settlement Class, for settlement purposes only, (3) appointed Class Counsel to represent the Settlement Class, (3) appointed Plaintiffs Amy Jovel and Michael Yee as Class Representatives for the Settlement Class, and (4) approved the proposed methods for giving notice.  The Settlement Class was defined as: All persons in the United States who purchased one or more BrainStrong Products on or after January 1, 2011 through March 4, 2016 (the "Settlement Class").

As required by the notice program set forth in the Agreement/Media Plan and approved by the Court, notice was published: (1) once in the national edition of the *People* magazine issue dated February 27, 2017 (on sale February 17, 2017); and (2) twice in the national edition of *USA Today*, on February 20 and February 27, 2017.  *See* Declaration of Lana Lucchesi ("Lucchesi Decl."), ¶ 12, which is attached as Ex. A to the Vozzolo Decl. Additionally, notice of

the Settlement was provided in banner ads on a variety of websites, and displayed from February 20, 2017 through March 19, 2017.  *Id.*  Notice was e-mailed to 8,588 potential customers utilizing data from Defendant's proprietary database.  *Id.* ¶ 7.  And, the settlement administrator, KCC, caused Notice to be served in compliance with the Class Action Fairness Act Notice.  *Id.* ¶ 4.

KCC also created a dedicated website www.brainhealthdhasettlement.com ("Settlement Website"), and set up a toll-free number, with Interactive Voice Response ("IVR") to answer potential questions.  *Id.* ¶¶ 13-14.  The Settlement Website also maintained copies of: Notice, Claim Form, Preliminary Approval Order, Settlement Agreement, Third Amended Class Action Complaint, and Order on Motion to Dismiss, and a "Frequently Asked Questions" segment. Additionally, the Settlement Website prominently noted the claim filing deadline; the deadline to opt out; the deadline to submit an objection; the date, time and location of the Fairness Hearing. *Id.* ¶ 14.

To date, KCC has received over 29,348 individual claim forms. *No* Settlement Class Member have objected to the Settlement and only 18 Settlement Class Members have opted out of the Settlement.[5]  *Id.* ¶¶ 15-17.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   TERMS OF THE PROPOSED SETTLEMENT

**i.     Monetary Relief.**     If the Settlement is finally approved by the Court, Defendant shall offer a full cash refund of the actual purchase price to Settlement Class Members who purchased one or more BrainStrong Products and submit a valid Claim Form along with a Proof of Purchase that documents the actual price paid.  *See* Stipulation of Settlement, ECF No.

---

[5] The deadline for Class members to file an objection or opt out of the Class is April 28, 2017.  Moreover, the deadline to postmark or submit a claim electronically is June 19, 2017.

109-1, ¶¶ 3.1, 8.3.a.  For Settlement Class Members who submit a valid Claim Form along with a Proof of Purchase that does not document the actual price paid, Defendant will offer a cash refund of the average retail price for every BrainStrong Product purchased by the claimant.  *See id.* ¶¶ 3.1, 8.3.b.  For Settlement Class Members who submit a valid Claim Form under penalty of perjury, but without documentation of the purchase, Defendant will offer claimants $4.00 in cash value or $6.50 in voucher value.  *See id.*  There is no limit on the number of claims a Settlement Class Member can make as long as the claim is accompanied by a Proof of Purchase; claimants without Proof of Purchase may submit a maximum of one (1) claim, with a maximum of two (2) claims per household.  *See id.*

      **ii.**    **Remedial Measures.**  Subsequent to the filing of the action, i-Health discontinued the marketing and sale of BrainStrong Products.  In addition, under the terms of the Settlement, i-Health has agreed that in the event i-Health should market and/or sell BrainStrong Products in the future, i-Health will not make any representation about the health benefits, performance, safety, or efficacy of the BrainStrong Products, unless the representation is non-misleading and supported by competent and reliable scientific evidence.  *See id.* ¶ 3.3.

      **iii.**    **Release Of Claims.**  In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendant from all claims asserted in this action and any related claims which could be asserted against Defendant in connection with the sale and marketing of BrainStrong Products during the relevant class period.

      **iv.**    **Costs, Fees And Representative Awards.**  Defendant has agreed to bear the costs of providing notice and administration of the Settlement, including processing claim forms and requests for exclusion ("Notice and Other Administrative Costs").  *See id.* ¶ 7.1.  The costs of notice and administration of the Settlement and all fees and costs to be paid to

Settlement Class Counsel do not affect the relief provided to the Class.  Rather, i-Health is paying these costs in addition to – and not out of – the recovery to the Class.  Subject to Court approval, i-Health has also agreed to pay Class Counsel Court-approved fees that do not exceed $250,000.  *See id.* ¶ 4.1.  In addition to the relief discussed above, i-Health has agreed to pay incentive fee awards to each Representative Plaintiff in the amount of $1,000, for service provided to the Settlement Class.  *See id.* ¶ 5.1. The Parties agreed to these amounts (attorneys' fees and incentive awards) only after the other substantive settlement terms were resolved and filed with the Court.  Vozzolo Decl. ¶¶ 32, 77.  Further, the Stipulation of Settlement and Plaintiffs' support of the Settlement are not conditioned upon the Court's approval of the amounts listed in this paragraph.

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate and reasonable.  Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  And, "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

To determine whether to approve a settlement, "'[c]ourts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.'"  *Tiro v. Public House Invs., LLC*, No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258, at *16 (S.D.N.Y. Sept. 10, 2013) (quoting *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 U.S. Dist. LEXIS 143773, at *10 (S.D.N.Y. Dec. 13, 2011)).  Indeed, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the

outcome, and the typical length of the litigation.  There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'"  *In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.   "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (internal quotation marks omitted).

### A.   THE PROPOSED SETTLEMENT IS PROCEDURALLY FAIR

First, the circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair.  The procedural fairness prong requires that the settlement "be the result of arm's length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to [effective representation] of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).   Negotiation processes are presumed fair when these elements are present. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Here, the negotiations leading to Settlement were conducted by highly qualified counsel, who respectively sought to obtain the best possible result for their clients.  The Settlement, reached only after months of arm's length negotiations among the parties and their counsel, was informed by the exchange of significant information throughout the discovery and settlement process.   The Settlement negotiations also included numerous in-person and telephonic settlement conferences before the Honorable Joan. M. Azrack (on November 20, 2014 and December 11, 2014); and before this Court (on January 23, 2015, February 6, 2015 and March

10

13, 2015.)  This Court's and then-Magistrate Judge Azrack's assistance helped the parties come to agreement on key terms of the Settlement.  In such situations, courts, including the Second Circuit, adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.  Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.") (alteration in original) (citation omitted) (internal quotation marks omitted).

### B.   THE PROPOSED SETTLEMENT IS SUBSTANTIVELY FAIR

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate.  "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)."  *In re Vitamin C Antitrust Litig*., No. 06-md-1738 (BMC)(JO), 2012 U.S. Dist. LEXIS 152275, at *14 (E.D.N.Y. Oct. 22, 2012).  The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Id*. at *14-15 (alteration in original)

(quoting *Grinnell*, 495 F.2d at 463).  However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances."  *Id.* at \*15. The *Grinnell* factors favor final approval.

> **1.      Factor One: Given the Complexity, Expense And Likely Duration Of The Litigation, Final Approval Is Appropriate**

The first factor requires the Court to consider "the complexity, expense and likely duration of the litigation."  *Id.* at \*15 (quoting *Grinnell*, 495 F.2d at 463).  This factor weighs in favor of final approval.

This litigation has been pending for over five years, and involves complex legal and factual issues. The multiple parties have engaged in extensive discovery.  Plaintiffs' Counsel reviewed 270,000 pages of documents they received through formal discovery, and additional documents obtained through informal discovery during the settlement negotiation process.  *See* Vozzolo Decl. ¶¶ 27, 29.  The next step in the litigation would have been deposition discovery and contested motions for class certification, motions to strike expert reports, and summary judgment, all of which would have been costly and time-consuming for the parties and the Court. Assuming Plaintiffs were to survive all dispositive motions, the risks of establishing liability posed by conflicting expert testimony would be exacerbated by the unpredictability of a lengthy and complex trial.  *Id.* ¶ 43.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert would be accepted by the jury.  *Id.*  Even if Plaintiffs were to prevail on the issue of liability, there would still be risks in establishing the existence of monetary damages.  *Id.* ¶ 45.  The experience of Plaintiffs' counsel has taught them that the above-described factors can make the outcome of this action extremely uncertain.  *Id.* ¶ 49.  The Settlement, on the other hand, permits a prompt

resolution of this action on terms that are fair, reasonable, and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals.

Simply put, "[l]itigation through trial would be complex, expensive, and long."  *Massiah v. MetroPlus Health Plan, Inc*., No. 11-cv-5669 (BMC), 2012 U.S. Dist. LEXIS 166383, at *8-9, at *3 (E.D.N.Y. Nov. 16, 2012).  The Settlement satisfies the first *Grinnell* factor.

### 2.    Factor Two: The Class' Favorable Reaction To The Settlement

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C*, 2012 U.S. Dist. LEXIS 152275, at *14 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor thus weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.  Following a nation-wide notice campaign, which included publication of the Settlement Notice three distinct times and in two different publications, e-mail notice, as well as 30 days of Internet Banner Notifications and informed Class Members that they could object to or exclude themselves from the Settlement and explained how to do so, only 18 Class Members have opted out of the Settlement and no objections have been lodged as of this filing.  *See* Lucchesi Decl. ¶¶ 7, 12, 15-17.  In entering final approval, courts have recognized that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Massiah*, 2012 U.S. Dist. LEXIS 166383, at *9 (internal quotation marks omitted).

Further, on February 16, 2016, 2016, KCC caused to be served by Certified First Class U.S. Mail, a Notice of Settlement to the United States Attorney General and the 56 State and

Territorial Attorney Generals in which potential Settlement Class Members may reside.  *See* Lucchesi Decl. ¶ 4.  To date, no objections from service of that CAFA Notice have been received. *See id.* ¶ 6.  This second factor weighs in favor of final approval.

### 3.    Factor Three: Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case

The third factor, "the stage of the proceedings and the amount of discovery completed," also calls for final approval.  *In re Vitamin C*, 2012 U.S. Dist. LEXIS 152275, at *14 (quoting *Grinnell*, 495 F.2d at 463).  "Extensive discovery ensures that the parties have had access to sufficient material to evaluate their case and to assess the adequacy of the settlement proposal in light of the strengths and weaknesses of their positions." *MetLife*, 689 F. Supp. 2d at 333-34 (citation omitted).  This factor weighs in favor of final approval.

Here, Settlement Class Counsel identified and conducted an extensive investigation as to the claims arising from i-Health's manufacture, distribution, and advertising of the BrainStrong Products.  Thereafter, the parties conducted substantial discovery, including the exchange of written discovery and documents.  Responses to the written discovery requests, including verified interrogatories, were served in accordance with the schedule set by the Court. Additionally, Plaintiffs reviewed over 270,000 pages of documents produced by i-Health, including highly confidential documents.  Vozzolo Decl. ¶ 33.  The efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

Because "[t]he parties have completed enough discovery to recommend settlement[,]" the answer to "[t]he pertinent question [of] whether counsel had an adequate appreciation of the merits of the case before negotiating," is undeniably "yes."  *Massiah*, 2012 U.S. Dist. LEXIS

166383, at *10 (internal quotation marks omitted).  After over five years of litigation, Plaintiffs and i-Health "have 'had sufficient information to act intelligently.'"  *MetLife*, 689 F. Supp. 2d at 334 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).  This factor has been met.

> **4.     Factors Four, Five, And Six: The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial.  *In re Vitamin C*, 2012 U.S. Dist. LEXIS 152275, at *17.  "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102, at * 11 (E.D.N.Y. Feb. 18, 2011) (quoting *In re Painewebber*, 171 F.R.D. at 126). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*.

To be sure, this case involved significant risks related to establishing, on a nationwide basis, that i-Health engaged in unfair, deceptive, or unlawful conduct in marketing the BrainStrong Products.  While Plaintiffs believe the evidence they have uncovered and would uncover through additional discovery in the case would aid the trier of fact in reaching a favorable decision for Plaintiffs and the Class Members, the reality remains that the trier of fact could nevertheless disagree with Plaintiffs.  Moreover, the risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after exhaustive briefing that would require expensive expert testimony.

Should the Court have certified the class, i-Health would have likely challenged certification and moved to decertify, forcing another round of briefing.  i-Health might have also

15

sought permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Risk, expense, and

delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay.

Accordingly, the fourth, fifth, and sixth *Grinnell* factors weigh in favor of the Settlement.

### 5.    Factor Seven: i-Health's Ability To Withstand A Greater Judgment

Regarding the seventh factor, the Court considers i-Health's ability "to withstand a

greater judgment."  *In re Vitamin C*, 2012 U.S. Dist. LEXIS 152275, at *15 (quoting *Grinnell*,

495 F.2d at 463).  This factor is not at issue here.

Here, there is no evidence on record which speaks to i-Health's ability to withstand a

greater judgment.  However, "'this fact alone does not undermine the reasonableness of the

instant settlement.'"  *Id*. at *19 (quoting *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447

(D.N.J. 2009)).  *Cf. MetLife*, 689 F. Supp. 2d at 339-40 ("Courts have recognized that the

defendant's ability to pay is much less important than other factors, especially where the other

*Grinnell* factors weigh heavily in favor of settlement approval….") (internal quotation marks

omitted).

### 6.    Factors Eight And Nine: The Range Of Reasonableness Of The Settlement In Light Of The Best Possible Recovery

The determination of whether a settlement amount is reasonable "does not involve the

use of a mathematical equation yielding a particularized sum."  *Frank v. Eastman Kodak Co.*,

228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks omitted).  "Instead, 'there is a

range of reasonableness with respect to a settlement – a range which recognizes the uncertainties

of law and fact in any particular case and the concomitant risks and costs necessarily inherent in

taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.

1972), *cert. denied*, 409 U.S. 1039 (1972)).

16

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, each Class Member may receive either a full monetary refund of the actual purchase price of the BrainStrong Products they purchased or a monetary refund of the average retail price for every BrainStrong Product purchased (depending upon whether documentation of the purchase price is provided). For Settlement Class Members who submit a valid Claim Form under penalty of perjury, but without documentation of the purchase, Defendant will offer claimants $4.00 in cash value or $6.50 in voucher value.  Additionally, i-Health has discontinued the marketing and sale of BrainStrong Products.   *See* Vozzolo Decl. ¶ 8.

Further, i-Health has agreed to pay the costs of notice and administration and has agreed to pay reasonable counsel fees and costs for Settlement Class Counsel, up to a maximum of $250,000.  *See id.* ¶ 12.  The payment by i-Health of notice costs, attorneys' fees and expenses is separate from and in addition to the relief afforded the Class Members.  *See id.* ¶ 10.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation, the Settlement is more than reasonable.  Moreover, when a settlement assures immediate payment of substantial amounts to class members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" a settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)).

17

Thus, taking into account the risks of continued litigation, and the fact that the Settlement was reached after intensive, arm's-length negotiations by experienced counsel, the eighth and ninth *Grinnell* factors favor final approval.

## V.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

Finally, the Court should determine, for settlement purposes only, whether the Settlement Class proposed for settlement is appropriate under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that: questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.  *Id.* at (b)(3).  In the Second Circuit, "'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility'" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

On March 4, 2016, the Court preliminarily certified the Settlement Class. The Court should now grant final certification because the Settlement meets all of the requirements of Federal Rule of Civil Procedure 23.

### A.   THE REQUIREMENTS OF RULE 23(A) ARE MET

### 1.   Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Class includes thousands of consumers nationwide. Given the number and geographic distribution of the Class Members, joinder of all Class Members would be impracticable, and the proposed Settlement Class easily satisfies Rule 23's numerosity requirement.

### 2.   Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). The disputed issue of law or fact must "'occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class.'" *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995). One single common issue of law will satisfy the commonality requirement. *See Michalow v. E. Coast Restoration & Consulting Corp.*, No. 1:09-cv-5475 (SLT)(MDG), 2011 U.S. Dist. LEXIS 150414, at *6 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999). A common issue of law will be found if plaintiffs "'identify some unifying thread among the members' claims. . . .'" *Id.* A court may find a common issue of law even though there exists "'some factual variation among class

19

members' specific grievances. . . .'" *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (citing *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998)).

Class Members share numerous common questions, including: (a) whether the BrainStrong Products were effective for their advertised purpose; (b) whether i-Health advertised or marketed the BrainStrong Products in a way that was false or misleading; (c) whether i-Health concealed from Plaintiffs and other members of the Class that the BrainStrong Products did not conform to their stated representations; (d) whether, as a result of i-Health's misrepresentations, Plaintiffs and other members of the Class suffered an ascertainable loss by purchasing the BrainStrong Products; and (e) whether Plaintiffs and Class Members are entitled to recover damages in connection with i-Health's alleged unlawful conduct.

Because Plaintiffs have demonstrated that there is at least one question of law or fact in common between Class Members, commonality is satisfied.

### 3. Typicality

Rule 23(a)(3)'s typical requirement is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted); *see also Robidoux*, 987 F.2d at 936. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936-37; *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) (stating that denial of class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle … would destroy much of the utility of Rule 23").

20

Here, supported by the same legal theories, Plaintiffs and all Settlement Class members share claims based on the same alleged course of conduct: the alleged misrepresentations concerning the effectiveness and quality of the BrainStrong Products.  Plaintiffs and all Settlement Class members have been injured in the same manner by this conduct.  Plaintiffs therefore satisfy the typicality requirement.

### 4.    Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of these factors are met here.

First, Plaintiffs have no interests antagonistic to absent Class Members.  Plaintiffs, like each absent Class Member, have a strong interest in proving i-Health's common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress.  Additionally, Plaintiffs and members of the Class seek to ensure that purchasers of over-the-counter brain supplements marketed by i-Health do not find themselves in a similar situation in the future.  As Plaintiffs prove their own claims, they will also prove the claims of the Class Members.  Further, this Court has already found that Plaintiffs' Counsel are qualified, experienced, and able to conduct the litigation, as evidenced by the Court's March 4, 2016 Preliminary Approval Order appointing Plaintiffs' Counsel as interim co-lead counsel. *See* ECF No. 113.  Additionally, Class Counsel are active practitioners who are highly experienced in complex class actions, including consumer fraud and product defect litigation. *See* Vozzolo

21

Decl. Ex. B, C; Syverson Decl Ex.1.   As such, Plaintiffs have clearly established that the adequacy requirement has been established.

>    **B.    THE REQUIREMENTS OF RULE 23(B) ARE MET**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).   This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.   Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

>    **1.    Common Questions Predominate**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

As discussed above, the same common questions relevant to the Rule 23(a)(2) analysis predominate, including: whether i-Health misrepresented the effectiveness and quality of the BrainStrong Products sold in the United States, whether i-Health's challenged product claims were material to consumers in deciding to purchase the BrainStrong Products, and whether purchasers of the BrainStrong Products suffered damages as a result of the allegedly deceptive conduct that are measurable on a classwide basis.   These issues can be resolved for all members

22

of the proposed class in a single adjudication using common evidence, including i-Health's internal documents and expert testimony. Since common questions present a significant aspect of the case and can be resolved in a single adjudication, Rule 23(b)(3)'s predominance requirement is met.

## 2.    Class Treatment Is Superior To Alternative Methods Of Adjudication

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (internal quotation marks omitted).  When a class is comprised of consumers, such as this one, who are not likely to bring suit on their own, a class action is the superior method for resolving the controversy.  *See Passeggio v. Cosmetique Inc.*, No. 1:98-cv-1774 (CPS), 1999 U.S. Dist. LEXIS 7607, at *16-19 (E.D.N.Y. Apr. 30, 1999); *Labbate-D'Alauro v. GC Servs. Ltd. P'ship.*, 168 F.R.D. 451, 458-59 (E.D.N.Y. 1996).

Class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims.  Given the large numbers of Settlement Class Members and the multitude of common issues present, the class device is also the most efficient and fair means of adjudicating these claims.  Class treatment in the settlement context is superior to multiple individual suits or piecemeal litigation because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication.  In addition, each Class Member's claim, individually, is of relatively low value.  As a practical matter, absent the use of the class action device, it would be too costly and inefficient for any individual plaintiff to finance a lawsuit asserting such claims through trial and appeal.  For these reasons, the superiority requirement is easily satisfied.

## VI.     THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

Class Members are entitled to reasonable notice of the Settlement and the opportunity to be heard.  *See* Fed. R. Civ. P. 23(e).  The Class Members were fully apprised of the existence of the Action, the Settlement, and the information needed to make informed decisions about their participation in the case.  The approved notice program informed the Settlement Class of their rights and included a comprehensive plan for publication and Internet placement, and was the best notice practicable given the circumstances of this case.

**Publication Notice:**  The Settlement Notice was published: twice in the national edition of *USA Today*, on February 20 and February 27, 2017; and once in the February 27, 2017 edition of *People* magazine.  *See* Lucchesi Decl. ¶ 12.  Moreover, during the period from February 20, 2017 through March 19, 2017, Internet Banner Notifications with links to the Settlement Website were broadcast through on a variety of websites, targeted to adults 25 years of age and older.  *Id.*

**Direct Notice:**  Furthermore, notice was e-mailed to 8,588 potential Class Members identified from Defendant's records.  *See id.* ¶ 4.  Additionally, KCC Claims received and processed 96 requests via telephone and mail from potential Class Members for printed copies of the Notice Packet.  *See id.* ¶ 4.

**Website Dedicated to the Settlement:**  The settlement administrator, KCC, created a website dedicated to the Settlement, www.brainhealthdhasettlement.com. *See id.* ¶ 10.  The website provides details about the Settlement, key documents concerning the Settlement and the litigation, a copy of the claim form, instructions for filing a claim form, Settlement Administrator contact information, opting out of the Settlement, or objecting to the Settlement, and information concerning applicable Settlement deadlines.  *See id.*  As of March 30, 2017, the Settlement Website has had 37,633 unique visitors.  *See id.* ¶ 14.

**Interactive Voice Response:**   A toll-free telephone number is in place to service potential Class Member inquiries.  *See id.* ¶ 13.  Potential Class Members can, by calling the toll-free number, obtain general information, request to receive the Notice Packet via direct mail.

**Class Action Fairness Act Notice:**   On or about February 16, 2016, the settlement administrator, KCC, in compliance with the Class Action Fairness Act Notice, caused to be served by Certified First Class U.S. Mail, a Notice of Settlement to the Unites States Attorney General, and the Attorneys General of each of the 50 States and the District of Columbia, the Attorneys General of the 5 recognized U.S. Territories, as well as parties of interest to this Action.  *See id.*  ¶ 4; 28 U.S.C. § 1715.   As such, the notice program provided a fair opportunity for members of the Settlement Class to obtain full disclosure of the conditions of the Settlement Agreement and to make an informed decision regarding the proposed Settlement.   Given the number of claims made to date (29,348 claims), the notice process has been remarkably successful.   Thus, the notices and the procedures embodied in the notices amply satisfy all of the legal requirements of Rule 23, as well as the constitutional due process requirements.

## VII.  SETTLEMENT CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE

### A.  THE REQUESTED AWARD IS PRESUMPTIVELY FAIR AND REASONABLE WHERE THAT AWARD IS INDEPENDENT OF THE BENEFIT OBTAINED FOR THE CLASS

The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible.   As the United States Supreme Court explains, "[a] request for attorney's fees should not result in a second major litigation.   Ideally, of course, litigants will settle the amount of a fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind,

we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."). Accordingly, "[i]n a case where the attorneys' fees are to be paid directly by defendant and, thus, 'money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (citing *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)); *see also In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *46-47 (S.D.N.Y. May 1, 2008) ("regardless of the size of the fee award, class members … will receive the same benefit; the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished"); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (noting "with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant]. In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members.").

Here, i-Health has agreed to pay Settlement Class Counsel a fixed sum of $250,000 in attorneys' fees and expenses in connection with the monetary and non-monetary relief obtained for the Class, subject to the Court's approval. Further, it was only after the parties negotiated all other material terms and provisions of the Settlement that the parties addressed the issue of attorneys' fees. Vozzolo Decl. ¶ 77. The resulting amount reflects a compromise reached through arm's-length bargaining by sophisticated counsel familiar with the case and reflects the risks for both sides, the nature of the result obtained for the Class, and the magnitude of the fee the Court might award if the matter were litigated.

Further, in this case, the fee arrangement was negotiated under the best of market conditions – an arm's-length negotiation – a process which the courts have encouraged. *See Eckerhart*, 461 U.S. at 437. i-Health has an interest in minimizing the fee; Settlement Class Counsel have an interest in maximizing the fee to compensate themselves (as the case law encourages) for their risk, innovation, and creativity; and the negotiations are informed by the parties' knowledge of the work done and result achieved as well as their views on what the Court may award if the attorneys' fees award were litigated. Additionally, i-Health's counsel has an interest in protecting its client who has a direct financial interest in the amount of the fees and expenses to be paid. i-Health does not need, nor has it sought, protection from the Court regarding the amount of the fees and expenses to be paid. Thus, the negotiated fee is entitled to a presumption of reasonableness. Because the fee arrangement in this case was negotiated by experienced counsel at arm's-length, judicial deference to the parties' fee agreement is warranted.

Additionally, as explained in *McBean*, 233 F.R.D. 377, a court need not review an application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that will not be paid from a common fund. "If money paid to the attorneys comes from a common fund, and is therefore money taken from the class," the court reasoned, "then the Court must carefully review the award to protect the interests of the absent class members." *Id*. at 392. "If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Id*. The *McBean* court concluded that the parties' agreement for attorneys' fees was objectively reasonable because it was the product of arm's-length negotiations. *Id*. In short, Settlement

27

Class Counsel's requested award of $250,000 in connection with conferring a substantial benefit on the Class is presumptively reasonable where that award will not diminish the relief obtained for the Class.

**B.      THE REQUESTED AWARD FOR ATTORNEYS' FEES IS REASONABLE UNDER THE APPROPRIATE LODESTAR METHOD**

"In awarding attorneys' fees, the Second Circuit has held that both the 'lodestar' method of computation (*i.e.*, hours reasonably expended multiplied by a reasonable hourly rate, plus an enhancement if deemed appropriate) and the 'percentage of the fund' method are available to district judges in calculating fees in common fund cases." *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2011 U.S. Dist. LEXIS 79786, at *34-35 (E.D.N.Y. July 15, 2011) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Here, Settlement relief will be paid to Settlement Class Members on a claims made basis with *no cap* to the relief available. Thus, the Court should use the lodestar method because there is no common settlement fund. This method of calculating fees is appropriate under the circumstances. *See Green v. City of New York*, No. 05-cv-429 (SLT)(ETB), 2009 U.S. Dist. LEXIS 86043, at *23 (E.D.N.Y. Sept. 14, 2009); *see also Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-05437 RBL, 2008 U.S. Dist. LEXIS 106515, at *4 (W.D. Wash. Apr. 24, 2008) ("Where, as here, Settlement relief will be paid on a claims made basis with no cap to the relief available, consideration of attorneys' fees lends itself more readily to the lodestar method. Because the attorneys' fees will be paid separately by [defendant] without reducing the relief available to the Class, the lodestar method is appropriate"). "'Thus regardless of the size of the fee award . . . the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished.'" *Jermyn v. Best Buy Stores, L. P.*, No. 08 Civ. 214 (CM), 2012 U.S. Dist. LEXIS

28

90289, at *24 (S.D.N.Y. June 27, 2012) (quoting *In re Sony*, 2008 U.S.  Dist. LEXIS 36093, at *43).  In such cases, "'the Court's fiduciary role in overseeing the award is greatly reduced.'" *Id.* (quoting *McBean*, 233 F.R.D. at 392).  Nevertheless, a court must still "'assess the reasonableness of the fee award, particularly because practical realities suggest that generally "a defendant is interested only in disposing of the total claim asserted against it," and not in "the allocation between the class payment and the attorneys' fees."' *Id.* at *25 (quoting *In re Sony*, 2008 U.S. Dist. LEXIS 36093, at *44).

Furthermore, courts may also consider the value of injunctive relief when determining appropriate attorneys' fees.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05-md-1720 (JG)(JO), 2014 U.S. Dist. LEXIS 3351, 112 (E.D.N.Y. Jan. 10, 2014) (considering injunctive relief a "relevant circumstance" in determining attorneys' fees).

Settlement Class Counsel's requested fees are reasonable under the lodestar method. As explained above, Settlement Class Counsel has already performed a substantial amount of work on behalf of the Settlement Class, and substantial work remains to secure final approval of the Settlement.   The proposed attorneys' fee award is proportional to the work that Settlement Class Counsel has performed to date and requested amount falls well below Settlement Class Counsel's combined lodestar for their work on the case.

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009). The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors. *Parker*, 631 F. Supp. 2d at 264.

Here, Settlement Class Counsel devoted a total of 1448.10 hours successfully prosecuting this litigation and negotiating its Settlement and have incurred $ 25,788.56 in out-of-pocket expenses.  Vozzolo Decl. ¶¶ 13, 17, Exs. D, E; Syverson Decl.  ¶¶ 8, 9. These efforts have resulted in a total lodestar of $ 662,296.00.  Vozzolo Decl. ¶ 13.  This current lodestar, a detailed summary of which is attached to the Declaration of Antonio Vozzolo and Declaration of Patricia Syverson submitted herewith, represents the total work Settlement Class Counsel have undertaken since the inception of this case.  Rather than seeking their full lodestar *plus* expenses, Class Counsel, after extensive negotiations with Defendant, agreed to request a total award of $250,000, a significant reduction to their estimated fees and expenses.  Vozzolo Decl. ¶ 66. Thus, the requested fee reflects a negative .34 multiplier on Settlement Class Counsel's combined lodestar, which will further be reduced by the work that remains to oversee the Settlement to its conclusion.  Vozzolo Decl. ¶¶ 66-69.  More importantly, the requested amount is inclusive of both attorneys' fees and litigation expenses, and will be paid, subject to the Court's approval, by i-Health, in addition to (and not out of) the relief made available to the Class.

The hours spent on this case are reasonable and reflect the ability and efficiency of Settlement Class Counsel.  The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate".  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) (the "[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original).  Here, the hourly rates used by Settlement Class Counsel and their legal staff are comparable to rates charged by attorneys with similar experience, skill,

and reputation, for similar services in the New York legal market.  *See* Vozzolo Decl. ¶¶ 71-74. The rates for each individual attorney and paralegal are set forth in the Declarations and in the charts and exhibits to the Declarations.  The lodestar rates are based on a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer.  Such rates necessarily reflect the reputation, experience, care, and successful records of Settlement Class Counsel.  The work performed to date, along with the work anticipated going forward, supports Settlement Class Counsel's lodestar.

In any case, this multiplier is well below that range of reasonableness, especially considering the risk of non-recovery and the excellent result achieved.  *See, e.g.*, *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409, at \*13 (S.D.N.Y. Sept. 14, 2012) (finding that a 3.36 multiplier is well within the range of reasonableness); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262, 2002 U.S. Dist. LEXIS 22663, at \*81 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit").  Moreover, a fee request which produces an inverse or negative lodestar multiplier further supports an inference of reasonableness. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (fact that counsel sought only 87.6% of their lodestar "strongly suggests that the requested fee is reasonable"); *Marsh & McLennan*, No. 04-8144 (CM), 2009 WL 5178546, at \*20 (approving fees where "not only are Lead Counsel not receiving a premium on their lodestar, their fee request amounts to a deep discount from their lodestar"); *In re Initial Pub. Offering*, 671 F. Supp. 2d at 515 (there is "no real danger of overcompensation" where negative multiplier is sought).[6]

---

[6] *See also In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 (VRW), 2007 WL 4171201, at \*16 (N.D. Cal. 2007) ("The resulting so called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616

C.   AN ANALYSIS OF THE *GOLDBERGER* FACTORS FURTHER FAVORS APPROVAL OF PLAINTIFFS' FEE REQUEST

Furthermore, courts in the Second Circuit evaluate whether an attorneys' fee is reasonable in the context of a class action settlement by looking to the factors specified in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). These factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50 (internal quotation marks omitted). Additionally, "[t]he negotiation of fee agreements is generally encouraged." *In re Sony*, 2008 U.S. Dist. LEXIS 36093, at *43-44 (citing *Hensley*, 461 U.S. at 437 ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.")). A review of these factors support Plaintiffs' fee request.

1.   Time And Labor Expended By Counsel

Settlement Class Counsel have expended substantial time and effort pursuing this case on behalf of the Class. Since its inception five years ago, Settlement Class Counsel have devoted more than 1448.10 hours to litigating this case. *See* Vozzolo Decl. ¶ 13; Ex. B; *see also* Syverson Decl. ¶ 8. Settlement Class Counsel negotiated a substantial settlement only after, among other things, conducting an extensive investigation of the issues involved in this case and drafting a highly-detailed complaint; engaging in, and winning, contested motion practice; engaging in discovery disputes with Defendant; reviewing a vast amount of documents obtained both formally through discovery and informally from Defendant; and attending in-person conferences before Magistrate Judge Azrack and this Court. Then Plaintiffs moved for preliminary approval

---

(AWI)(SKO), 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012) ("An implied negative multiplier supports the reasonableness of the percentage fee request").

and worked with notice experts to develop and implement an adequate and far-reaching notice plan.

Given the extensive amount of time Settlement Class Counsel have expended in this action (covering every aspect of litigation from pre-filing investigation and discovery through contested motion practice) the requested fee award here is very reasonable and still results in a negative lodestar multiple of .34.  And, Settlement Class Counsel will expend additional time finalizing the Settlement in this action, such as responding to objectors should there be any.  This factor has been met.

### 2.     Magnitude And Complexity Of The Litigation

"[C]lass actions have a well-deserved reputation as being most complex." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal quotation marks omitted).  This case was no exception, both factually and legally. This litigation has been pending for over five years and involves complex legal and factual issues.  Plaintiffs and i-Health engaged in extensive discovery, with Plaintiffs reviewing over 270,000 documents they received through formal discovery and many other documents informally obtained.  *See* Vozzolo Decl. ¶¶ 27, 29.

Settlement negotiations included multiple formal and informal discussions, which required substantial work and significant risk that Settlement Class Counsel's efforts (and their out-of-pocket costs) would go uncompensated.  Given this landscape, the fact that Settlement Class Counsel negotiated this Settlement is a notable achievement.

Therefore, the fee award requested in this matter is well within the parameters used throughout this Circuit.  In light of the complexity of this case, the work it required, and concomitant risks to Settlement Class Counsel, a substantially higher multiplier would be justified.  "In the 'usual' case, the multiplier applied to the lodestar typically is positive, to

account for the contingent nature of the engagement and the risk of such a case," or to reflect "the result obtained, and the quality of the attorney's work." *In Re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2007 U.S. Dist. LEXIS 13661, at *30 (S.D.N.Y. Mar. 1, 2007); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010).  Thus, the negative multiplier further supports the reasonableness of the fee request.

### 3.    The Risk Of Litigation

As courts in this Circuit have recognized, this factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis). This factor weighs especially strongly in favor of approval of the requested fees and cost payment because, while Settlement Class Counsel prosecuted this case on a contingency basis, the requested amount falls below Settlement Class Counsel's combined lodestar for their work on the case. *See* Vozzolo Decl. ¶¶ 66, 75.

The next step in the litigation of this case would have been depositions, contested motions for class certification, and summary judgment, all of which would be costly and time-consuming for the parties and the Court.  Assuming Plaintiffs were to survive all motions to dismiss and all motions for summary judgment, the risks of establishing liability posed by conflicting expert testimony would have been exacerbated by the unpredictability of a lengthy and complex trial.  *See Id.* ¶¶ 44, 48.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert would be accepted by the jury.  *Id.*  Thus, the risk of non-payment is substantial.

34

4.      **The Quality Of Representation**

Class action litigation presents unique challenges, and Settlement Class Counsel proved that they have the ability and resources to litigate this case zealously and effectively.  In addition, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance." *MetLife*, 689 F. Supp. 2d at 362.  Settlement Class Counsel achieved a positive result in this case while facing well-resourced and experienced defense counsel.  *See Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

This case involved matters that required significant expenditure of Settlement Class Counsel's time such as: (1) extensive pre-litigation investigation; (2) extensive and detailed legal research into the substantive law of the causes of action at issue; (3) developing and executing litigation strategies; (4) researching and preparing for motions; (6) developing and executing settlement strategies; and (7) analyzing data and information exchanged between the parties to assure that the Settlement's terms are based upon objective evidence that had been thoroughly considered in the context of the risks, expenses, and benefits of continuing to litigate the case. Vozzolo Decl. ¶¶ 7, 18-20, 55-58.

Settlement Class Counsel vigorously and competently pursued the Settlement Class Members' claims.  The arm's-length settlement negotiations that took place demonstrate that Settlement Class Counsel adequately represented the Settlement Class.  Moreover, Plaintiffs and Settlement Class Counsel have no conflicts of interests with the Settlement Class.  Rather, Plaintiffs, like each absent Settlement Class Member, have a strong interest in proving i-Health's common course of conduct, establishing its unlawfulness, and obtaining redress.  In pursing this litigation, Settlement Class Counsel, as well as Plaintiffs, have advanced and will continue to

advance and fully protect the common interests of all members of the Class.  Settlement Class Counsel have extensive experience and expertise in prosecuting complex class actions. Settlement Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation.  *See* Vozzolo Decl., Ex. B, C; Syverson Decl. Ex. 1 for Settlement Class Counsel's firm resumes.  Additionally, Class Counsel were appointed Co-Lead Class Counsel for the Settlement Class on March 4, 2016.

**5.      The Request Fee In Relation To The Settlement**

The Settlement provides substantial and immediate benefits to purchasers of the BrainStrong Products.  i-Health shall offer a *full monetary refund* of the actual purchase price to any Settlement Class Members who purchased one or more BrainStrong Products and submit a valid Claim Form along with a Proof of Purchase that documents the actual price paid.  For Settlement Class Members who submit a valid Claim Form along with a Proof of Purchase that does not document the actual price paid, Defendant will offer a monetary refund of the average retail price for every BrainStrong Product purchased by the claimant.  For Settlement Class Members who submit a valid Claim Form under penalty of perjury, but without documentation of the purchase, Defendant will offer claimants $4.00 in cash value or $6.50 in voucher value. Additionally, i-Health has agreed to discontinue the marketing and sale of BrainStrong Products.

In light of the Settlement's benefits, the requested fees/costs amount, resulting in a negative lodestar multiplier, is modest.  It should also be emphasized that the requested fee does not reduce or affect the relief provided to the class; rather, it is an amount i-Health has agreed to pay in addition to the terms of the settlement.  Settlement relief will be paid to Settlement Class Members on a claims made basis with *no cap* to the relief available.  Where a fee is negotiated and does not reduce any recovery to the class, "the danger of conflicts of interest between

36

attorneys and class members is diminished." *In re Sony*, 2008 U.S. Dist. LEXIS 36093, at *43-44 (citing *McBean*, 233 F.R.D.at 392).

### 6.      Public Policy Considerations

Finally, public policy considerations favor the requested fee award here.  This case sought recovery of economic damages related to the sale of the BrainStrong products, with individual damages per purchase small in light of aggregate damages.  As such, reasonable fee awards must be provided in order to ensure that such wrongdoing, like that alleged here, will be remedied.

"Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), at *17 (E.D.N.Y. Nov. 20, 2012) (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980)).  As a result, "[a]ttorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk."  *Id.* (citing Goldberger, 209 F.3d at 51).  As a result, this sixth *Goldberger* factor, like the others before it, has been met here.  Accordingly, the requested attorneys' fees are reasonable.

## VIII.   SETTLEMENT CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

To date, Settlement Class Counsel incurred out-of-pocket expenses in the aggregate amount of $ 25,788.56 in prosecuting this litigation on behalf of the class.  Vozzolo Decl. ¶ 69, Ex. E; Syverson Decl. ¶ 9.  These expenses are categorized in the declarations submitted to the Court herewith.  The incurred costs include court fees, copying fees, courier charges, legal research charges, telephone/facsimile fees, travel costs, postage fees, and other related costs. Vozzolo Decl. Ex. E; Syverson Decl. ¶ 9.

"Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *Miltland Raleigh-Durham v. Myers*, 840 F Supp. 235, 239 (S.D.N.Y. 1993) (internal quotation marks omitted). The expenses categorized in the attorney declarations submitted herewith reflect commonly reimbursed expenses. *See, e.g., In re Vitamin C Antitrust Litig.*, No. 06-md-1738 (BMC)(JO), 2012 U.S. Dist. LEXIS 152275, at *34 (E.D.N.Y. Oct. 22, 2012); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (awarding costs and expenses, noting "these expenses reflect the costs of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses," adding "I see no reason to depart from the common practice in this circuit of granting expense requests"), *aff'd*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

Each of these costs was necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred.

## IX.   THE REQUESTED INCENTIVE AWARDS FOR CLASS REPRESENTATIVES ARE REASONABLE AND STANDARD

In recognition of their efforts on behalf of the Class, and subject to the approval of the Court, i-Health has agreed to pay Class Representatives up to $1,000 each (for a total of $2,000), as appropriate compensation for their time and effort serving as the class representatives in this litigation.

While by no means a matter of right or guarantee, "[c]ourts often grant incentive awards to representative plaintiffs." *In re Vitamin C*, 2012 U.S. Dist. LEXIS 152275, at *35. "'The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.'" *Id*. (quoting *In re*

*Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2012 U.S. Dist. LEXIS 123875, at *7 (S.D.N.Y. Aug. 22, 2012)).  Additionally, "[i]n granting an incentive award, 'a court must ensure that the named plaintiffs, as fiduciaries for the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members,'" as "'[a] particularly suspect arrangement exists where the incentive payments are greatly disproportionate to the recovery set aside for absent class members.'" *Id*. (quoting *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0403, 2002 U.S. Dist. LEXIS 16314, at *17 (E.D.N.Y. Aug. 1, 2002)).

Here, the involvement of the Class Representatives in this action was critical to the ultimate success of the case.  Each Class Representative has diligently performed their obligations as a class representative.  Settlement Class Counsel consulted with the Class Representatives throughout the investigation, filing, prosecution, and settlement of this litigation. Vozzolo Decl. ¶¶ 79-80.  As such, Amy Jovel and Michael Yee were actively involved in the litigation and devoted substantial time and effort to the case.  They worked with counsel in order to prepare, finalize, and verify written discovery responses.  *Id.*.  They consulted with Settlement Class Counsel frequently and reviewed a wide variety of documents related to this case including the complaints and Settlement Agreement.  *Id.*  Moreover, Amy Jovel and Michael Yee were prepared to "go the distance" in this litigation to continue to properly represent the Class and fight to obtain significant relief on their behalf.  *Id.*  Their actions and dedication have conferred a significant benefit on Class Members across the United States.

Moreover, the amount requested is fair and consistent with what courts have awarded in this District. *See*, *e.g.*, *McAnaney v. Astoria Fin. Corp.*, No. 04-cv-1101 (JFB) (WDW), 2011 U.S. Dist. LEXIS 114768, at *33 (E.D.N.Y. Feb. 11, 2011) (authorizing incentive payments of

$7,500 each to seven named plaintiffs in a real-estate closing fee case alleging violations of TILA, state consumer protection statutes, breach of contract, fraud and unjust enrichment); *Dupler*, 705 F. Supp. 2d at 245 (approving $25,000 and $5,000 service awards to two plaintiffs in a settlement involving allegations that the warehouse chain's backdating of membership renewals was a deceptive practice under New York's consumer fraud statute).

The requested amounts of $1,000 for each Class Representative reflect the involvement and time each Class Representative dedicated to the case.  Accordingly, incentive fee awards of $1,000 for each of the Class Representatives is fair and reasonable.

## X.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion and enter the Final Approval Order submitted herewith, and grant final approval of the Settlement Agreement in its entirety.

Dated: April 21, 2017

Respectfully submitted,

**VOZZOLO LLC**

By:  */s/ Antonio Vozzolo*
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, NJ 074578
Tel: 201-630-8820
Fax: 201-604-8400
E-mail: avozzolo@vozzolo.com

**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
Patricia N. Syverson (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, #300
Phoenix, AZ 85016
Tel: (602) 274-1100
E-mail: eryan@bffb.com
           vbunch@bffb.com
           psyverson@bffb.com

40

– and –

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Proposed Class Counsel and*
*Attorneys for Plaintiffs*