UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

AMY JOVEL and MICHAEL YEE,
on behalf of themselves and all
others similarly situated,                    FINAL APPROVAL
                                              ORDER AND JUDGMENT
                         Plaintiffs,

                                              12-cv-5614 (MDG)
         - against -

I-HEALTH, INC.,

                         Defendant.

- - - - - - - - - - - - - - - - - X

GO, MARILYN D., United States Magistrate Judge:

     In this putative class action, plaintiffs Amy Jovel and

Michael Yee allege that defendant i-Health, Inc. ("i-Health") made

false and misleading representations as to three dietary

supplements containing docosahexaenoic acid, or "DHA," which i-

Health marketed and sold under the product names BrainStrong

Toddler, BrainStrong Kids and/or BrainStrong Adults (collectively,

the "BrainStrong Products").  After reaching an agreement to

settle, the parties consented to having me hear all matters in this

action pursuant to 28 U.S.C. § 636(c).  See DE 110.[1]

---

[1] The defendant later moved, without plaintiffs' agreement, to
withdraw the consent in order to have the case reassigned to United
States District Judge Frederic Block and Magistrate Judge Steven M.
Gold, who are presiding over two related civil cases involving a
similar DHA dietary supplement manufactured by an affiliate of i-
Health--Worth et al. v. CVS Pharmacy, Inc., ECF No. 2:16-cv-498-FB-
SMG ("Worth"), and Aliano v. CVS Pharmacy, Inc., ECF No. 1:16-cv-
2624-FB-SMG ("Aliano").  See DE 127.  This Court denied defendant's
motion in part because the Worth and Aliano cases are at a less
                                                     (continued...)

This Court preliminarily approved the Settlement and certified the proposed Class by Order filed on March 4, 2016.  See DE 113.  Plaintiffs now move for final certification of a class pursuant to Fed. R. Civ. P. 23(a) and (b) and for final approval of the settlement of this class action pursuant to Fed. R. Civ. P. 23(e).  DE 132.  A final fairness hearing was held on May 19, 2017.

For the reasons discussed at the fairness hearing and set forth in the Preliminary Approval Order and below, the motion is granted.

FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2012, plaintiff Amy Jovel commenced a putative class action on behalf of herself and similarly situated individuals against i-Health in the Superior Court of the State of California for the County of Los Angeles.  In her complaint, plaintiff Jovel asserted claims under California state law on behalf of a putative class of consumers in California who had purchased the three BrainStrong Products.  This action was removed by i-Health to the United States District Court for the Central District of California on June 25, 2012, and later transferred to this Court after United States District Judge Dean D. Pregerson granted the defendant's motion to transfer.  See Order filed on November 8, 2012, DE 25.

_____

(...continued)
advanced stage of settlement proceedings and plaintiffs would be prejudiced by any further delay in considering the settlement reached herein.  DE 128 at 8-10.

Following transfer, the parties proceeded with discovery after then United States District Judge John Gleeson denied defendant's motion to dismiss on September 27, 2013.  See DE 48, 63.  Plaintiff Jovel later filed a Third Amended Complaint ("3d Am. Complaint") on April 1, 2014, adding Michael Yee[2] as a named plaintiff and asserting claims for breach of express warranty under the laws of 20 states (Count I), for violation of certain California and New York statutes (Counts II through V), and for violation of consumer protection laws of several states (Count VI).  See 3d Am. Complaint (DE 80).  Plaintiffs principally allege that defendant's representations that the BrainStrong Products support brain health and function are deceptive and lack scientific substantiation because the BrainStrong Products contain DHA made from algae, rather than from fish, and algal DHA does not support brain health.  Id. at ¶¶ 14-24.

Shortly after plaintiffs filed the 3d Am. Complaint, the Court granted the parties' request for a stay of discovery while they attempted to settle the action.  See Order of then Magistrate Judge Joan M. Azrack filed on May 19, 2014, granting request for a stay (DE 84).  The parties thereafter engaged in extended settlement negotiations supervised by the Court, and eventually participated in a number of settlement conferences with Judge Azrack in late

---

[2]  Plaintiff Michael Yee had commenced a similar action against i-Health in this district on March 27, 2012, but later voluntarily discontinued the action when his counsel became associated with the firm representing plaintiff Jovel.  See Yee v. I-Health, ECF No. 1:12-cv-1504-FB-JO; see also Declaration of Patricia N. Syverson dated January 29, 2016, ("Syverson Decl.") at ¶ 3 (DE 109).

2014 and then with me after the case was reassigned to me in
January 2015.  The parties advised at a conference held on April
22, 2015, that they had reached an agreement in principle to settle
the case.

After further lengthy negotiations to resolve remaining
settlement terms and to complete drafting of settlement documents,
the parties filed a joint motion for preliminary approval of the
settlement on January 29, 2016.  See DE 107.  I granted the motion
on March 4, 2016.  See DE 113.  In granting the motion for
preliminary approval, this Court: (1) preliminarily approved the
settlement reached by the parties, as set forth in a Settlement
Agreement dated January 29, 2016, attached to the motion ("Sett.
Ag.," DE 109-1); (2) conditionally certified for settlement
purposes the class proposed in the Settlement Agreement; (3)
appointed Patricia N. Syverson, Esq. of Bonnett Fairbourn Friedman
& Balint P.C., as class counsel; and (4) approved the proposed
class notices of settlement of the litigation.  See DE 113.
Specifically, this Court provisionally certified a nationwide
settlement class consisting of all persons "who purchased one or
more BrainStrong Products on or after January 1, 2011 through the
date" of the Preliminary Approval Order.  Id. at 2, ¶¶ 7.

Under the Settlement Agreement that this Court provisionally
approved, the defendant agreed to refund to any class member
submitting a valid claim form accompanied with a proof of the
purchase either the actual price paid, if the proof contains the
purchase price, or the average retail price of the product, if the

proof of purchase does not document the actual price paid.  See
Sett. Ag. at ¶¶ 3.1, 8.3.  In addition, the defendant agreed to pay
any class member submitting a valid claim form without a proof of
purchase either a maximum of $4.00 in cash or a voucher for $6.50
in value for any i-Health product, at the claimant's option.  Id.
Besides providing this monetary relief, defendant agreed to
discontinue marketing and selling the BrainStrong Products and to
refrain from selling any of the BrainStrong Products "unless any
representations regarding the health benefits, performance, safety,
or efficacy of the BrainStrong Products are supported by Competent
and Reliable Scientific Evidence . . . .", as further delineated in
the Settlement Agreement.  Id. at ¶ 3.3.

In support of their motion for final approval of the
settlement filed on April 21, 2017, DE 132, plaintiffs submitted a
declaration from Lana Lucchesi, Project Manager for Kurtzman Carson
Consultants LLC, plaintiffs' claims administrator, indicating that
as of the date of the motion, the claims administrator had received
29,348 claim forms.  See Declaration of Lana Lucchesi dated April
21, 2017, ("Lucchesi Decl.") at ¶ 17 (DE 134-1).  In a further
declaration filed on May 5, 2017, Ms. Lucchesi stated that 19
persons had filed requests for exclusion by the May 3, 2017
deadline set and no person had filed objections by the April 28,
2017 deadline.  See Supplemental Declaration of Lana Lucchesi dated
May 3, 2017, at ¶¶ 5-6 (DE 138-1).

At the fairness hearing held on May 19, 2017, plaintiffs'
counsel confirmed that neither his firm nor the claims

administrator had received any objections.  There were no persons
attending the proceeding who voiced any objections.  Following the
hearing, plaintiffs filed a further report from Ms. Lucchesi
indicating that as of the June 19, 2017 deadline for submission of
claims, the claims administrator had received 43,399 claim forms,
of which 156 were submitted with proofs of purchase and 43,243 were
submitted without.  See Supplemental Declaration of Lana Lucchesi
dated June 23, 2017, at ¶ 3 (DE 142-1).  She also stated that a
number of the claim forms submitted without proofs of purchase were
for more than two bottles of the BrainStrong Product and would thus
be subject to the limitation in the Settlement Agreement of two
claims per household.  Id.; see also Sett. Ag. at ¶ 8.3.  The
claims submitted accounted for more than 191,000 bottles of the
BrainStrong Products out of approximately 800,000 bottles sold.
See DE 138 at 1.


<u>DISCUSSION</u>

Before approving a class settlement agreement, a district
court must first determine, after rigorous analysis, whether the
requirements for class certification in Fed. R. Civ. P. 23(a) and
(b) have been satisfied.  See <u>In re Am. Int'l Grp., Inc. Sec.</u>
<u>Litig.</u>, 689 F.3d 229, 238 (2d Cir. 2012) (citing <u>In re Pet Food</u>
<u>Prods. Liab. Litig.</u>, 629 F.3d 333, 341 (3d Cir. 2010)).

I.   <u>Final Certification of the Settlement Class</u>

In order to certify a class, plaintiffs must demonstrate that
the proposed class meets the requirements of Rule 23 of the Federal

Rules of Civil Procedure.  Rule 23(a) of the Federal Rules of Civil
Procedure requires that any proposed class action: "(1) be
sufficiently numerous, (2) involve questions of law or fact common
to the class, (3) involve class plaintiffs whose claims are typical
of those of the class, and (4) involve a class representative or
representatives who adequately represent the interests of the
class."  Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010)
(citing Fed. R. Civ. P. 23(a)).  Rule 23(b)(3) requires that in
addition to satisfying Rule 23(a), plaintiffs must also demonstrate
that the "questions of law or fact common to class members
predominate over any questions affecting only individual members,
and that a class action is superior to other available methods for
fairly and efficiently adjudicating the controversy."  Fed. R. Civ.
P. 23(b)(3).

     For the reasons set forth below, this Court finds that
plaintiffs meet all of the requirements for class  certification
under Rules 23(a) and (b)(3).

     Plaintiffs satisfy Rule 23(a)(1) because the class includes
purchasers of over 800,000 bottles of the BrainStrong Products
nationwide.  In fact, over 43,300 potential class members have
submitted claims, including 156 with proofs of purchase.  See
Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.
1995) ("[N]umerosity is presumed at a level of 40 members").

     Plaintiffs satisfy Rule 23(a)(2) because the claims of
plaintiffs and the class members involve common issues of fact and
law.  The claims arise from purchase of the same BrainStrong

Products as a result of alleged misrepresentations by defendant that the products support brain health.  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that there exists a common issue such that "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

For the same reasons, plaintiffs satisfy the typicality requirement of Rule 23(a)(3) because plaintiffs' claims arise from the same factual and legal circumstances as those of the potential class members.  See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (noting that the "commonality and typicality requirements tend to merge into one other" since both are designed to ensure that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence") (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982)).

Plaintiffs also satisfy Rule 23(a)(4) which requires that "the interests of the class" be "fairly and adequately protect[ed]."  In making such a determination, the court must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members.  Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  Plaintiffs' interests clearly are not antagonistic or at odds with the class members. See Diaz v. E. Locating Serv. Inc., 10 Civ. 4082, 2010 WL 2945556,

at *2 (S.D.N.Y. July 22, 2010); Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811, 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010).

Plaintiffs also satisfy the requirements of Rule 23(b)(3). This requirement is met "if resolution of some of the legal or factual issues that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Myers, 624 F.3d at 547 (internal citation and quotation marks omitted). Given the allegations in the complaint, and for the reasons previously discussed, plaintiffs' common legal claims, which arise from the defendant's alleged misrepresentations, clearly predominate over any factual or legal variations among class members. See Diaz, 2010 WL 2945556, at *2; Prasker, 2010 WL 476009, at *2. Similarly, plaintiffs satisfy the superiority requirement because the class action mechanism will enable disposition of thousands of similar claims in one forum, conserving judicial resources and benefitting class members, particularly those who lack the resources to bring their claims individually. See Rodolico v. Unisys Corp., 199 F.R.D. 468, 479-80 (E.D.N.Y. 2001) (noting that class actions provide a superior method for "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications").

Because all the requirements of Rules 23(a) and 23(b)(3) have been met, this Court certifies the following class for settlement purposes under Fed. R. Civ. P. 23(e):

> All persons in the United States who purchased one or more BrainStrong Products on or after January 1, 2011 through March 4, 2016. Excluded from the membership are Defendant and its past and present parents, subsidiaries, divisions, affiliates, assignors, predecessors, successors and assigns; the past and present partners, managers, members, directors, officers, employees, agents, attorneys, insurers, accountants and representatives of any and all of the foregoing entities; any government entities; and persons who purchased BrainStrong Products for the purpose of resale.

## II.   Approval of the Settlement

In evaluating a proposed settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate. See Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000). Settlements are strongly favored as a matter of policy, because, "[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time." Evans v. Jeff D., 475 U.S. 717, 760 n.15 (1986). Courts should exercise their discretion "in light of the general judicial policy favoring settlement." In re Sumitomo Copper Litig., 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (citation omitted); accord Maley v. Del Glob. Techs. Corp., 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002).

A court evaluating the fairness of a settlement should examine both procedural and substantive fairness.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) (citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).

A.   Procedural Fairness

In reviewing the procedural fairness of a settlement, a court "must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" D'Amato, 236 F.3d at 85 (quoting Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)). A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's length negotiations conducted by capable counsel, well experienced in class action litigation.  See Wal-Mart Stores, 396 F.3d at 117; see also McReynolds v. Richards-Cantave, 588 F.3d 790, 804 (2d Cir. 2009).  In addition, "the view of experienced counsel favoring the settlement is 'entitled to [] great weight.' . . . [and] [t]here is thus a strong initial presumption that the compromise as negotiated herein under the [c]ourt's supervision is fair and reasonable." In re Milken and Assocs. Sec. Litig., 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (citations omitted).

The parties reached this settlement after they conducted written discovery.  Defendants provided voluminous documents and

interrogatory responses regarding the BrainStrong Products and class information, including total sales and prices of the BrainStrong Products.  See Syverson Decl. at ¶¶ 6, 9.  The parties then participated in extended settlement negotiations under Court supervision, and reached agreement on the substantive settlement terms before negotiating the amount of fees.  See Declaration of Antonio Vozzolo dated April 21, 2017, ("Vozzolo Decl.") at ¶ 15 (DE 134).

Significantly, plaintiffs' counsel recommend that this Court approve the settlement.  Id. at ¶¶ 4-5; Syverson Decl. at ¶ 22. Ms. Syverson and Mr. Vozzolo are attorneys with substantial experience litigating consumer class actions, and are associated with firms specializing in class actions.  They have devoted substantial time identifying, investigating and settling the claims in this action. They advise that they analyzed the evidence with the assistance of experts both before and after production of discovery.  Given these circumstances, I find that the presumption of procedural fairness applies and that the settlement is procedurally fair.  Wal-Mart Stores, 396 F.3d at 116.

B.   Substantive Fairness

In evaluating the substantive fairness of a class action settlement, district courts must consider the nine Grinnell factors enumerated by the Second Circuit:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing
damages; (6) the risks of maintaining the class action
through the trial; (7) the ability of the defendants
to withstand a greater judgment; (8) the range of
reasonableness of the settlement fund in light of the
best possible recovery; [and] (9) the range of
reasonableness of the settlement fund to a possible
recovery in light of all the attendant risks of
litigation.

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.

1974)(internal citations omitted).

In applying these factors, the court may neither substitute

its judgment for that of the parties who negotiated the settlement

nor conduct a mini-trial of the merits of the action.  See

Weinberger, 698 F.2d at 74.  Rather, the court must determine

whether the settlement is within a range that reasonable and

experienced attorneys could accept considering all relevant risks,

facts and circumstances.  See id.; Grinnell, 495 F.2d at 455.

Here, I find that the settlement is substantively fair because

all but one of the factors set forth in Grinnell weigh in favor of

final approval.

     1.   Complexity, Expense and Likely
           Duration of Litigation

As noted by plaintiffs' counsel, this case involves complex

legal and factual issues and, if not resolved, would require

substantially more discovery and disposition of contested motions

for class certification, to strike expert reports and for summary

judgment.  If a trial is held, there likely would be post-judgment

motions and appeals.  Continuing this litigation would undoubtedly

result in further delay and expense, which would likely outweigh

any potential recovery.  In addition, the delay inherent in further
litigation would reduce the value of any potential recovery.  See
Maley, 186 F. Supp. 2d at 361-62.  Under these circumstances, the
first Grinnell factor weighs in favor of final approval.

        2.   Reaction of the Class

    "It is well-settled that the reaction of the class to the
settlement is perhaps the most significant factor to be weighed in
considering its adequacy." Id. at 362.  As discussed in further
detail below, the notices of the settlement, which explained
settlement terms and informed class members of their right to
object or to exclude themselves from the settlement, were widely
disseminated by publication in two national newspapers, through the
internet and emails to persons who previously expressed an interest
in the BrainStrong Products.  Over 40,000 persons submitted claims,
while only nineteen persons sought to be excluded from the class
and no class member objected to the settlement.  This factor thus
weighs in favor of approval of the settlement.  See Beckman v.
KeyBank, N.A., 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (finding class
reaction was positive where none had objected and only eight of
1,735 members opted out); see also Prasker, 2010 WL 476009, at *4
(granting final approval where no class members objected and only
two class members opted out); Wright v. Stern, 553 F. Supp. 2d 337,
345 (S.D.N.Y. 2008) (Chin, J.) ("The fact that the vast majority of
class members neither objected nor opted out is a strong indication
that the proposed settlement is fair, reasonable, and adequate").

3.  The Stage of the Proceedings and Amount of
    Discovery Completed

The stage of the proceedings and the amount of discovery
completed are evaluated to ensure that the parties "have a clear
view of the strengths and weaknesses of their cases."  In re Warner
Commc'ns. Sec. Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985).
Plaintiffs' counsel conducted a thorough investigation of the
factual and legal aspects of plaintiffs' claims both before and
after commencing this action.  Syverson Decl. at ¶ 11.  Plaintiffs'
counsel obtained substantial discovery from defendant concerning
the products and class data, and consulted with experts regarding
the efficacy of DHA on brain health.  Vozzolo Decl. at ¶ 33.  As a
result, counsel had sufficient information to enable them to
analyze the merits of the case and damages before engaging in
settlement negotiations.  See In re Nissan Radiator/Transmission
Cooler Litig., No. 10 Civ. 7493, 2013 WL 4080946, at *7 (S.D.N.Y.
May 30, 2013) (finding factor satisfied where the plaintiffs
conducted an investigation prior to bringing the action, retained
experts, and engaged in discovery to support the proposed
settlement); Maley, 186 F. Supp. 2d at 364 (same).

Thus, this factor, too, weighs in favor of approving the
settlement.

4.  Risks in Establishing Liability and Damages
    and Maintaining the Class Action Through Trial

The fourth, fifth and sixth Grinnell factors also support
final approval.  "Litigation inherently involves risks[,]" both in

establishing liability and damages.  In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  One purpose of a settlement is to avoid the uncertainty of a trial on the merits.

Here, defendant has denied liability and expressed its intent to oppose class certification and to move for summary judgment.  In his letter to the Court dated May 26, 2017, Frank Spano, counsel for defendant, advises that defendant would strongly oppose class certification, in part, because plaintiffs would have difficulty proving class-wide damages since the health benefits of DHA "are well-known."  DE 140 at 1-2.  If the Court were to grant a class certification motion, the defendant would likely appeal or could later move to decertify, which would require additional rounds of briefing and delay.  In addition, defendant points to conflicting views supporting defendant's position regarding the efficacy of algal DHA and the corresponding difficulty that plaintiffs would face in proving the falsity of defendant's statements.  Id. at 3.  Acknowledging the risks in maintaining a class action and prevailing on liability, plaintiffs' counsel also notes that since the proof of their claims here are dependent on technical, scientific information, any trial would likely result in a "battle of the experts," which would, in turn, lead to increased litigation expenses, as well as a more unpredictable jury verdict.  Vozzolo Decl. at ¶¶ 43-44.

The settlement here will eliminate the risk, expense and delay inherent in the litigation process.

5.   <u>Collectibility and Defendants' Ability to</u>
     <u>Withstand a Greater Judgment</u>

The parties agree that defendant has the ability to withstand a greater judgment.  However, this factor, standing alone, does not render a settlement unfair where, as here, the other <u>Grinnell</u> factors weigh in favor of settlement.  <u>See</u> <u>D'Amato</u>, 236 F.3d at 86.

6.   <u>Range of Reasonableness of the Settlement in</u>
     <u>Light of the Best Possible Recovery and Risks</u>
     <u>of Litigation</u> (8th and 9th <u>Grinnell</u> factors)

The determination of a reasonable settlement "'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'"  <u>In re PaineWebber</u>, 171 F.R.D. at 130 (quoting <u>Milken</u>, 150 F.R.D. at 66).  As the Second Circuit has noted, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." <u>Grinnell</u>, 495 F.2d at 455.  "In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." <u>Id.</u> at 455 n.2.

As discussed, the Settlement Agreement provides that each class member having actual proof of purchase will receive either a full cash refund of the actual purchase price paid or the average price of the BrainStrong Products purchased.  The agreement also provides to claimants without proofs of purchase either $4.00 in cash or $6.50 in voucher.  The defendant has additionally agreed to

pay the costs of providing notice and administration of the settlement, as well as fees and costs of up to $250,000.  Vozzolo Decl. ¶ 12.

Clearly, a refund of the price paid for any BrainStrong Product purchased affords a full recovery to class members, but such relief is available under the settlement only to claimants able to provide actual proofs of purchases.  Of the more than 43,300 claims submitted, only 156 claims were accompanied with a proof of purchase, a minuscule fraction of the total claims submitted.  This is hardly surprising given that consumers are not likely to keep receipts for the purchase of a supplement for any significant period of time, particularly for a product that costs between $10 and $15 dollars.  See 3d Am. Compl. ¶ 9 (indicating the purchase price paid by Ms. Jovel for BrainStrong Toddler and BrainStrong Kids).  Although the value of the cash or voucher that claimants without proofs of purchase would receive is less than the price paid for the products, the amounts are reasonable in light of the risks, since the problem that class members would face documenting their purchases would remain even if plaintiffs were to go to trial and prevail on liability.  Thus, this Court finds that the settlement reached is well within the range of reasonableness given the risks and delay of continued litigation measured against the value of obtaining certain compensation more quickly.  In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly").

In sum, in light of the views of counsel, the complete lack of objections by class members, the settlement amounts to be paid and the attendant risks of litigation, I find that the settlement provides a fair recovery for all class members.  <u>See</u> <u>Gilliam v. Addicts Rehab. Ctr. Fund</u>, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. 2008).

III.     <u>Sufficiency of Notices</u>

This Court previously reviewed the proposed notices to prospective class members and found in the Preliminary Approval Order that the notices fairly and adequately advise class members of the terms of the settlement, and advised members of their right to opt out of the class, to object to the settlement and to appear at the fairness hearing.

Ms. Lucchesi confirms in her declaration that notices of the settlement were timely given in the manner specified by the Settlement Agreement and approved by the Court.  <u>See</u> Lucchesi Decl. ¶¶ 3-14.  The claims administrator emailed notices to 8,588 potential class members who had been identified by defendant as having contacted defendant by email about the BrainStrong Products. <u>Id.</u> at ¶ 8; <u>see also</u> Transcript of May 19, 2017 Hearing ("Tr.") at 5 (DE 141).  In addition, the claims administrator arranged for publication of a summary notice of the settlement once in the national edition of *People* magazine and twice in the national editions of *USA Today*.  Lucchesi Decl. at ¶ 12.  The claims administrator also arranged for 10,000,000 internet banner

impressions concerning the settlement to appear during a one month period on websites aimed at adults 25 years of age and older making certain pertinent searches, such as for the term "brain supplements." Id. at ¶ 12; Tr. at 6-7. The banner notices contained a link to a website maintained by the claims administrator, who also maintained an interactive voice response system to provide information to prospective claimants. Id. at ¶¶ 12-14.

This Court finds that class members were provided the best notice practicable under the circumstances and that the notice and distribution of such notices comported with all constitutional requirements, including due process. The fact that the claims submitted account for 191,000 out of 800,000 bottles of the BrainStrong Products sold is a strong indication of the effectiveness of the notices disseminated. Tr. at 4.

Lastly, plaintiffs complied with the Class Action Fairness Act, 28 U.S.C. § 1715, and provided appropriate notice to specified governmental entities, from whom no objections were received. See Lucchesi Decl. ¶¶ 3-6.

IV.  Service Award for Plaintiffs

Plaintiffs Amy Jovel and Michael Yee, the class representatives, each seek service awards of $1,000.00. Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming

and continuing as a litigant and any other burdens sustained by the plaintiffs.  See In re Vitamin C Antitrust Litig., No. 06-MD-1738, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012); Parker v. Jekyll & Hyde Entm't Holdings, L.L.C., No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).  Such awards are within the discretion of the court.  See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).  "'Courts look for the existence of special circumstances when determining whether an award is justified and, if so, in what amount.'"  Torres v. Toback, Bernstein & Reiss LLP, No. 11 Civ. 1368, 2014 WL 1330957, at *2 (E.D.N.Y. Mar. 31, 2014) (quoting In re AOL Time Warner ERISA Litig., No. 02 Civ. 8853, 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007)).  Such special circumstances include "the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery."  Eastman Kodak, 228 F.R.D. at 187 (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 2007)).

Mr. Vozzolo states that class counsel consulted with the class representatives throughout the litigation in person, by telephone and by email, and both gave "feedback and direction" throughout the litigation, including giving comments and input on drafts of settlement documents.  Vozzolo Decl. at ¶¶ 78-79.  Given their

active involvement thus far and apparent willingness to represent the class even if there had been no settlement, id. at ¶ 79, I find the proposed incentive award of $1,000 for each class representative appropriate and well within the range of awards granted in this Circuit.  See Torres, 2014 WL 1330957, at *4 (suggesting $1,000 incentive award is appropriate in FDCPA class action); In re AOL Time Warner, 2007 WL 3145111, at *4 (reducing incentive awards from $20,000 to $1,000 and $500).

V.   Attorneys' Fees

Attorneys who create a common fund from which members of a class are compensated are entitled to "a reasonable fee--set by the court--to be taken from the fund."  Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000) (internal citation omitted). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court[.]"  Id. at 47.  However, where the requested attorneys' fees will be paid directly by defendant rather than drawn from a common fund, as here, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members."  Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (quoting McBean v. City of N.Y., 233 F.R.D. 377, 392 (S.D.N.Y. 2006)).  Since the amount of the attorneys' fee will not affect the class recovery, this factor weighs in favor of finding the fee reasonable.  See Shapiro v. JPMorgan Chase & Co., No. 11 Civ. 8331, 2014 WL 1224666, at *25

(S.D.N.Y. Mar. 24, 2014); <u>Dupler</u>, 705 F. Supp. 2d at 243; <u>In re Sony SXRD Rear Projection Television Class Action Litig.</u>, No. 06 Civ. 5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008). Notably, under the settlement, compensation to class members is dependent only on submission of a valid claim and the total amount payable is neither subject to a cap nor affected by the amount of fees awarded.

Fees may be awarded under either the lodestar or percentage of the funds methods.  <u>McDaniel v. County of Schenectady</u>, 595 F.3d 411, 417 (2d Cir. 2010) (citation omitted).  Regardless of the method utilized, courts in this Circuit must consider the following factors in determining what constitutes a reasonable fee: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  <u>See Goldberger</u>, 209 F.3d at 50 (citation omitted).

Here, class counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation, and are therefore entitled to attorneys' fees.  As previously discussed, this case is legally and factually complex and required substantial effort on the part of plaintiffs' counsel litigating against a tenacious adversary.  Two substantial motions have already been litigated in two different forums, and the parties have engaged in pre-certification discovery, including substantial written discovery.  Additionally, based on observations of counsel at court

proceedings and familiarity with their submissions, I find that counsel were well qualified to conduct this litigation.

This Court analyzes the fees and costs sought by class counsel under the lodestar method, as proposed by counsel. See Savoie v. Merchants Bank, 166 F.3d 456, 460-61 (2d Cir. 1999) (affirming use of lodestar approach where attorneys' fees were determined after settlement payment to class).

Under the lodestar method, the "lodestar" is calculated by using "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which results in a "presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550-53 (2010) (discussing lodestar methodology). A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). The determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. See Farbotko v. Clinton County of

<u>New York</u>, 433 F.3d 204, 209 (2d Cir. 2005).  The relevant "community" is generally considered "the district where the district court sits."  <u>See</u> <u>Arbor Hill</u>, 522 F.3d at 190.

Plaintiffs request attorneys' fees and costs in the amount of $250,000, the maximum amount negotiated under the Settlement Agreement.  <u>See</u> Sett. Ag. ¶ 2.15.  Plaintiffs' counsel have provided billing records reflecting 557.10 hours of work performed by legal staff of Faruqi & Faruqi, LLP and Vozzolo LLC, and 891.0 hours of work performed by the firm Bonnett, Fairbourn, Friedman & Balint, P.C. for a total of 1,448.10 hours.  Vozzolo Decl. at ¶¶ 60-61 and Ex. D; Declaration of Patricia N. Syverson dated April 21, 2017, at ¶ 8 (DE 135).[3]  These firms claim current hourly rates ranging from $250 to $850 for attorney time and rates of $165 to $275 for paralegal staff time.  <u>Id.</u>  Based on the information provided, the fees of plaintiffs' counsel under the lodestar method is $318,874 for the Faruqi & Faruqi and Vozzolo firms and $343,422 for the Bonnett firm, for a total of $662,296.  <u>Id.</u>  The $250,000 for fees and costs sought by counsel, as negotiated under the settlement, is 37.75% of the lodestar claimed.

After reviewing the detailed time records submitted by class counsel, this Court finds that the time spent litigating this action was within the range of reasonableness given the factual and legal complexities of the case and the vigorous defense presented. While there may have been some duplication of work given the number

---

[3]  In addition to the submissions publicly filed, class counsel delivered paper copies of their billing records, which this Court has reviewed.  <u>See</u> DE 137.

of attorneys involved and the rates may be slightly high compared to rates ordinarily approved in this district, the actual amount requested is a fraction of the lodestar.  Even a 50% reduction of the lodestar to $331,148 would result in a fee exceeding the negotiated fee under the settlement, for a 0.75 multiplier.

In addition, the fees documented do not include the additional time and effort spent with respect to the fairness hearing and the time counsel will be required to expend administering the settlement going forward.  See deMunecas v. Bold Food, LLC, No. 09 Civ. 440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010).  Also, the $250,000 amount under the settlement includes costs.  Class counsel expended total costs of $49,165.79, which I find to be reasonable.  See Vozzolo Decl. ¶ 69 and Ex. E; Syverson Decl. ¶¶ 9-10.

Thus, I find that the fees requested are reasonable under the circumstances of this case, particularly in light of the negative lodestar multiplier present here.  See, e.g., In re Marsh ERISA Litig., 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (request for 87.6% of lodestar "strongly suggests that the requested fee is reasonable"); In re Initial Pub. Offering. Sec. Litig., 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (approving settlement where "requested fee already reflects a discount" and any further reduction would result in a "trivial" incremental benefit to class members).

CONCLUSION

For the foregoing reasons, the plaintiffs' motion for final approval of the class settlement and class certification (DE 132) is granted as follows:

1.  The Settlement Agreement filed on January 29, 2016 (DE 109-1) is unconditionally approved, and the Settlement Agreement, including the Release set forth therein, is incorporated and made a part of this Final Approval Order.

2.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court hereby certifies the following nationwide class (the "Class") for settlement purposes only:

> All persons in the United States who purchased one or more BrainStrong Products on or after January 1, 2011 through March 4, 2016. Excluded from the membership are Defendant and its past and present parents, subsidiaries, divisions, affiliates, assignors, predecessors, successors and assigns; the past and present partners, managers, members, directors, officers, employees, agents, attorneys, insurers, accountants and representatives of any and all of the foregoing entities; any government entities; and persons who purchased BrainStrong Products for the purpose of resale.

3.  Pursuant to Federal Rule of Civil Procedure 23(c)(3), the plaintiffs and all persons who satisfy the class definition above, except those class members who timely and validly excluded themselves from the class, are settlement class members and are bound by this Judgment, along with their heirs, executors, administrators, successors and assigns.

4.  This Court hereby appoints Faruqi & Faruqi, LLP and Bonnett, Fairbourn, Friedman & Balint, P.C., as co-class counsel for their representation of the settlement class members.

5.   The Court approves the payment of attorneys' fees and costs of $250,000 to co-class counsel for plaintiffs.

6.   The Court approves payment of an incentive award of $1,000 to each of the plaintiffs, Amy Jovel and Michael Yee.

7.   The Court directs the parties, their counsel and the claims administrator to implement and to consummate the Settlement Agreement in accordance with its terms.

8. All claims against defendant i-Health in this action are hereby dismissed with prejudice, without fees or costs to any party except as provided above.

9.   This Court hereby retains jurisdiction over consummation and performance of the Settlement Agreement.  Any disputes or controversies arising with respect to the Settlement Agreement shall be presented by motion to this Court, provided, however, that nothing in this paragraph shall limit the scope of the injunction set forth in the Settlement Agreement or restrict the parties from exercising any of their rights thereunder.

10.   The Clerk of the Court is respectfully requested to enter this Final Approval Order and Judgment forthwith and to close this case.

   **SO ORDERED.**

Dated:     Brooklyn, New York
           August 3, 2017

                              _____/s/_____
                              MARILYN DOLAN GO
                              UNITED STATES MAGISTRATE JUDGE